Merrimack, }
March 2, 1920. }

### EARL H. FITZHUGH v. GRAND TRUNK RAILWAY CO. & a.

Case for conspiracy to prevent one from obtaining work by threatening his prospective employers with a boycott is not an action for "defamation" within the meaning of P. S., c. 245, s. 1, and may be begun by trustee process.

The "federal control act" (40 U. S. Stat. c. 25) is not a bar to any action, authorized by the laws of this state, against a railroad under the management of the director-general of railroads, except that in such actions railroad property in his possession shall not be taken on either *mesne* or final process.

Neither the "federal control act" nor P. S., c. 245 authorizes the attachment by trustee process of the money, rights, etc. of a defendant in the possession of a railroad by summoning the director-general as trustee; nor does either of those statutes authorize the attachment of the share or interest of a stockholder in a railroad by summoning the director-general as trustee.

No action lies against the director-general of railroads, except as pursuant to general order No. 50, for any claim upon which action may be maintained against a railroad under 40 U. S. Stat. c. 25; in general, under that order he may be sued only on claims "arising since Dec. 31, 1917, and growing out of his possession etc. of any railroad, where the action would lie against the carrier but for federal control."

CASE, for conspiracy. The action was begun by trustee process. The question whether the director-general of railroads can be summoned as trustee, was transferred without a ruling from the April term, 1919, of the superior court, by *Sawyer*, J.

The director-general moved to dismiss the action, as to himself as trustee, on the grounds:

that "this court has no jurisdiction to hold said Walker D. Hines, as director-general of railroads, by reason of his having in his hands or possession any shares of stock of the Central Vermont Railway Company, or of the Boston & Maine Railroad, or any interest in either or both of said railroad corporations, belonging to the defendants in this case, or either of them":

that "among the railroads taken over and operated and controlled by the president of the United States, through said Walker D. Hines as director-general of railroads, by virtue of the act of congress passed for that purpose, are the railroads and transportation systems of said Central Vermont Railway Company and of the Boston and Maine Railroad, with all their respective appurtenances":

that "if said Walker D. Hines, as such director-general of railroads, has in his hands or possession any shares of stock of the Central Vermont Railway Company, or of the Boston and Maine Railroad, or

any interest in either or both of said railroad corporations, belonging to the defendants in this case, or either of them, the same is property used by said transportation systems, so under federal control, in the conduct of their business as common carriers, and not otherwise, and is held and possessed by said Walker D. Hines, as such director-general of railroads, in charge of said transportation systems under federal control, and not otherwise":

that "the proclamation of the president of the United States, dated December 26, 1917, has the following provision, which precludes the attempted holding of said Walker D. Hines as such director-general of railroads: 'Except with the prior written assent of said director, no attachment by *mesne* process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said director may, by general or special orders, otherwise determine'":

that "without the alleged defamatory matter, the declaration in the case states no cause of action; and so said declaration shows that this is really a suit for 'defamation' which, under the laws of the State of New Hampshire, cannot be instituted by trustee process, P. S., c. 245, s. 1."

*James W. Remick* (by brief and orally), for the plaintiff.

*John W. Redmond* (of Vermont), specially (by brief and orally), for the director-general.

*George F. Rich*, for the railroads.

Young, J. The president assumed control of the railroads on December 26, 1917, in pursuance of the authority conferred on him by congress on August 29, 1916; and, on March 21, 1918, congress passed an act entitled "An Act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners and for other purposes." (40 U. S. Stat. c. 25.) Section 8 of that act authorized the president to appoint an agent or agents to perform the duties imposed on him by the act and in pursuance of this authority, he appointed William G. McAdoo director-general of railroads, with power to control and operate all the transportation systems in the United States. Later, McAdoo

resigned and Walker D. Hines was appointed his successor. The plaintiff summoned Hines as trustee in this suit. He appeared specially and moved to be discharged because, as he says, (1) this is an action for defamation within the meaning of that term as it is used in P. S., c. 245, s. 1, and (2) because this is, in fact, a suit against the United States.

I. An examination of the plaintiff's declaration and the specification filed in connection therewith, shows that he is seeking to recover not only the loss he says he sustained, because of what the defendants did in pursuance of a conspiracy to ruin his reputation by slandering and libeling him, but also the loss he sustained because they threatened to boycott anyone who might employ him, and in that way prevented him from obtaining work at his profession.

If an action to recover the loss the plaintiff sustained because of what the defendants did in pursuance of their conspiracy to ruin his reputation by slandering and libeling him, is an action for defamation within the meaning of that term as it is used in P. S., c. 245, s. 1, that is in no sense true of an action to recover the loss he sustained because of what the defendants did in pursuance of a conspiracy to prevent his obtaining work by threatening to boycott anyone who might employ him, and loss or damage caused in that way may be recovered, for such acts are actionable when done by a single individual. *Huskie* v. *Griffin*, 75 N. H. 345, 348.

II. The question raised by the other branch of the director-general's motion is whether it is permissible for an individual to summon him as trustee in the courts of this state, in other words, when if ever he can be sued in the courts of this state, for the plaintiff sued him when he summoned him as trustee.

It will be helpful when we are considering this question to have clearly in mind the fact that it does not involve the question whether the plaintiff can sue the defendant railroads while they are under federal control. The director-general does not question the plaintiff's right to sue them and s. 10 of the act under which he operates the roads provides in terms that that may be done; that is, the section provides that the plaintiff may do whatever the laws of this state permit, except attach railroad property in the director-general's possession or seize it on execution. In short, this act imposes no limits on the rights the law of this state gives the plaintiff in respect to suing the defendant railroads, except that it forbids his seizing any of their property which is in the possession of the director-general, on either *mesne* or final process. Neither does the consideration

of the question whether the director-general may be summoned as trustee involve the question, whether the law of this state permits the plaintiff to attach (1) the money, rights and credits of one of the defendants in the possession of the other defendants by summoning them as trustees, or, (2) the share or interest of the individual defendants in the defendant corporations by summoning the corporations as trustees. The director-general's position in so far as these questions are concerned is that if the law of this state permits the plaintiff to do either or both of these things by summoning the individual defendants, or the defendant corporations as trustees, it does not permit him to do them or either of them by summoning him as trustee. This contention is well founded whether it is based on the act under which the director-general operates the roads or on the law of this state, for there is nothing in the act which provides either in terms or by reasonable implication that the money, rights and credits of a third person in the possession of a railroad operated by the director-general may be attached by summoning him as trustee; and that is also true of the laws of this state, for he is not operating the roads as the agent of their owners, or for their benefit, nor as an officer of the court for the benefit of all concerned, but as an officer of the United States. The relations between the United States and the owners is very similar to that between a lessee and a lessor, and there is no more reason to think the legislature intended, when it enacted P. S., c. 245, to permit the plaintiff to attach the money, rights and credits of the other defendants in the possession of one of the defendant railroads by summoning the director-general as trustee, than there is for thinking that it intended to permit him to attach the money, rights and credits of the defendants in the possession of the Northern Railroad by summoning the Boston & Lowell railroad as trustee.

· What is true in respect to attaching the money, rights and credits of the individual defendants in the possession of the defendant corporations, is also true in respect to attaching the share or interest of the individual defendants in these corporations. If the law of this state permits the plaintiff to attach the share or interest of the individual defendants in these corporations by summoning the corporations as trustees — a question as to which no opinion is intended to be expressed — it does not permit him to attach this share or interest in these corporations, by summoning the director-general as trustee, any more than it permits him to attach the share or interest of the defendants in the Portsmouth & Concord R. R. by summon-

ing the Boston & Maine R. R. as trustee. In short, there is nothing in the law of this state which permits the plaintiff to reach (1) the share or interest of the individual defendants in the defendant corporations, or (2) the money, rights and credits of one of the defendants in the possession of the defendant corporations by summoning the director-general as trustee. The only other question before the court is whether the plaintiff can reach the money, rights and credits of the defendants or any of them in the possession of the director-general by summoning him as trustee.

The test to decide that question, as the law is understood in this jurisdiction, is to inquire whether the defendants or any of them have a claim which they can enforce against the director-general in the courts of this state, and which can be adjudicated so that the trustee may be charged upon disclosure; for the test to determine whether the plaintiff can reach the money, rights or credits of the defendants in the hands or possession of a third person by summoning him as trustee is to inquire whether the defendants have such a claim against that person.

The question, therefore, on this branch of the case is when, if ever, it is permissible for either an individual or a corporation to sue the director-general. The director-general is an officer of the United States and it is elementary that he cannot be sued as such in the courts of this state unless the laws of the United States provide that he may be. Although there is no act of congress which provides in terms that an individual or a corporation may sue the director-general in the courts of this state, s. 10 of the act under which he operates the roads provides that the roads may be sued while he is operating them, in any case in which they could be sued if they were not under federal control and that it shall be no answer to such a suit to show that they are federal agencies. In other words, s. 10 provides that it shall be no answer to a suit against a railroad to show that it is under federal control, even when the cause of action grew out of the operation of the road by the director-general. In fact, such suits were brought against the road for a time but as the United States was the real defendant in all cases in which the cause of action arose after the president assumed control of the roads, the director-general on October 28, 1918, issued what is known as general order No. 50. This order in so far as it is material to the questions now before the court, provides that actions at law, suits in equity, and proceedings in admiralty, "based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and

damage to property, arising since December 31, 1917, and growing
out of the possession, use, control or operation of any railroad or
system of transportation by the Director General of Railroads, which
action, suit, or proceeding but for federal control might· have been
brought against the carrier company, shall be brought against Wil-
liam G. McAdoo, Director General of Railroads, and not otherwise."
This order in effect, says that whoever has a claim which has arisen
since the president assumed control of the railroads and which can
be reduced to judgment against the railroad under the provisions
of s. 10, shall make the director-general the defendant if he sues to
enforce it. The test, therefore, to determine whether the defendants
or any of them have a claim on which they can sue the director-
general in the courts of this state, is to inquire whether they have a
claim which they could have enforced against one of the defendant
corporations, but for this order, for the order limits the suits that
may be brought against the director-general to those based on claims
"growing out of the possession, use, control or operation of any rail-
road or system of transportation by the Director General of Rail-
roads, which action, suit, or proceeding, but for federal control might
have been brought against the carrier." In other words, the defend-
ants cannot sue the director-general in the courts of this state unless
they are authorized to do so by this order, for notwithstanding s. 10
provides that it shall be no answer to a suit to show that the railroad
was under federal control, at the time the cause of action accrued,
it does not provide either in terms or by necessary implication that
the director-general shall be named as the defendant in a suit to
enforce it.

In fact, the only authority for suing the director-general that can
be found is that contained in this order, and as we have seen that
order limits the suits that may be brought against him to those based
on claims growing out of "the possession, use, control or operation"
of a road which might be brought against it, but for federal control.
The test, therefore, to determine whether the defendants can sue
the director-general is to inquire whether the claim on which the
suit is based grew out of "the possession, use, control or operation"
of a railroad by the director-general, and if so, whether the suit
could be brought against the road, but for that order. The defendant
corporations, therefore, cannot sue the director-general on any claim
they may have for compensation for the use of their property or for
any damage to their property while under federal control, for even
if such claims may be said to grow out of the possession, use, control

or operation of a railroad by the director-general, they are not a claim on which the road could be sued if it were not for that order. The fact s. 3 of the act under which he operates the road, provides how such claims shall be adjudicated, tends to the same conclusion; that is, tends to the conclusion that they cannot be adjudicated in a suit against the director-general.

The test, therefore, to determine whether the plaintiff can summon the director-general as trustee is to inquire whether the defendants or any of them have a claim growing out of the use or operation of a railroad by the director-general, which could be enforced in a suit against the road, but for order No. 50, and for which the road could be charged as trustee except for federal control. But it does not follow from the fact the plaintiff can obtain a judgment against the director-general that the court will issue an execution to enforce it for the judgment will be against him in his official capacity and s. 10 forbids the levy of an execution on the property of a carrier so long as it is under federal control.

The order therefore should be the director-general's motion is denied, but unless it shall appear on the filing of his disclosure that some of the defendants have a claim which they can reduce to a judgment in a suit against him in the courts of this state, and that general order No. 50 is still in force, he will be discharged as trustee.

*Case discharged.*

PARSONS, C. J., not having been present at the argument took no part in the decision: the others concurred.