Yvonne FLETCHER, Plaintiff,

v.

WESLEY MEDICAL CENTER, and Becky M. Loosen, Defendants.

No. 83–1289.

United States District Court, D. Kansas.

May 7, 1984.

Fred W. Phelps, Jr., Topeka, Kan., for plaintiff.

Michael North, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiff Yvonne Fletcher claims in this lawsuit that she was discharged by defendant Becky Loosen from her employment as a secretary for defendant Wesley Medical Center, Inc., in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.;* she also asserts pendent state claims for the tort of outrage, for tortious interference with a business relationship, for breach of an implied covenant of good faith and fair dealing, and for breach of express and implied covenants of job security. Defendants have now moved the Court for summary judgment on all of plaintiff's state law claims; as explained more fully below, the Court concludes that defendants' motion must be denied insofar as it relates to an ostensible implied-in-fact contract providing job security, but must in all other respects be granted.

■ The "tort of outrage" recognized by Kansas law is that defined in § 46(1) of the Restatement (Second) of Torts, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *See Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 529 P.2d 104 (1974). As recently stated in *Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175 (1981), the cause of action has two critical elements which plaintiff must establish, and which the Court must determine to exist before submitting the issue to a jury:

(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

230 Kan. at 292–93, 637 P.2d 1175. These stringent requirements have been formulated with the aim of protecting defendants from "fictitious claims and litigations based

on trivialities or mere bad manners." *Id.* at 293, 637 P.2d 1175; *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, 368, 673 P.2d 1112 (1983).

■ It is readily apparent that plaintiff does not meet either of these requirements. The "extreme and outrageous" conduct of which she complains—which to be actionable must amount to conduct "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," *Roberts v. Saylor, supra*, 230 Kan. at 293, 637 P.2d 1175—boils down to nothing more than defendants having fired her, ostensibly for legitimate reasons, but actually because of her age. As this Court noted in *Mattern v. Chance Manufacturing Co., Inc.*, No. 82–1841 (D.Kan. Feb. 9, 1984), the termination of an employee, whatever the secret motive underlying it, is the kind of event that happens every day; such an act is not even a breach of modern-day business etiquette, much less an uncivilized barbarism. Quite a bit more—such as the endless stream of vulgar, racist invective and threats of violence uttered by the defendant in *Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916 (1982)—must accompany a firing if it is to be deemed "outrageous." By the same token, the "emotional distress" suffered by plaintiff has not been shown to rise above the ordinary feelings of anger and disappointment common among employees who believe themselves unjustly dismissed: if the pain felt by the plaintiffs in *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983)—who suffered "terrible" shock and distress upon falsely being told by a hospital official that their daughter had died—was deemed insufficiently severe to support a cause of action, then it goes without saying that Miss Fletcher cannot recover for her unhappiness, either. Until such a time as job security is recognized as some sort of natural right, reasonable people can be expected to endure the pain of job loss as "part of the price of living among people." *See* Restatement (Second) of Torts § 46, comment j.

■ Plaintiff's second pendent claim is that defendant Loosen tortiously interfered with the employment contract between plaintiff and defendant Wesley Medical Center. Assuming arguendo that plaintiff's expectation of continuing employment was sufficiently real that it was capable of being interfered with, this Court nonetheless believes that in the context of the facts of this case, plaintiff has no cause of action. It is well established that an employer cannot be brought to task for interfering with its own relations vis-a-vis its employees, *see, e.g. O'Neill v. Ara Services, Inc.*, 457 F.Supp. 182 (E.D.Pa.1978); *Manley v. Pandick Press, Inc.*, 72 App.Div.2d 452, 424 N.Y.S.2d 902 (1980), and it just does not make sense to view Mrs. Loosen's act in firing Miss Fletcher as other than the act of Wesley Medical Center, Inc., since the corporation authorized, or at the very least ratified, her behavior. It is quite immaterial that Mrs. Loosen is claimed to have acted with "personal purposes," that is, enmity toward the elderly: since the initial decision to fire plaintiff rested with her, her bad motives would be legally attributable to the corporation for purposes of plaintiff's age discrimination claims, *see* 29 U.S.C. § 630(b), and do not undercut the fact that in dismissing plaintiff Mrs. Loosen was acting within the scope of her duties as head of the department in which plaintiff worked. *See, e.g., Martin v. Platt*, 179 Ind.App. 688, 386 N.E.2d 1026 (1979); *Manley v. Pandick Press, Inc., supra; Countrywide Publications, Inc. v. Kable News Company*, 74 App.Div.2d 522, 425 N.Y.S.2d 15 (1980); *but see, e.g., Olympic Fish Products, Inc. v. Lloyd*, 93 Wash.2d 596, 611 P.2d 737 (1980); *Calhoun v. Falstaff Brewing Corp.*, 478 F.Supp. 357 (E.D.Mo.1979). The other side of this coin, of course, is that where the corporate agent's motives or acts are not legally attributable to the corporation, the agent may be held liable for interference. *Cf., e.g., Friend v. Leidinger*, 446 F.Supp. 361, 383 (E.D.Va.1977), aff'd 588 F.2d 61 (4th Cir.1978) (corporate employer not lia-

ble for racially discriminatory acts of supervisors absent authorization or acquiescence in those acts); *Croker v. Boeing Co. (Vertol Div.),* 437 F.Supp. 1138, 1191 (E.D. Pa.1977) (same).

■ Plaintiff's third pendent claim is based on her argument that this Court should recognize a covenant of "good faith and fair dealing," implied at law as a part of every employment contract, that would prohibit employers from discharging their employees without just cause. This Court has already expressed its view that the Kansas Supreme Court would reject plaintiff's position, and be unwilling to "regard an employer's arbitrariness or whimsicality as so contrary to public policy as to require writing the prohibition of such caprice into every employment contract, as a matter of law." *Mattern v. Chance Manufacturing Co., supra,* unpublished Memorandum at 2. This Court believes, rather, that the Kansas Supreme Court, consistent with a long line of cases beginning with *Swart v. Huston,* 154 Kan. 182, 117 P.2d 576 (1941), and extending through *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976), would adhere to the view expressed by the New York Court of Appeals in *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983):

> Those jurisdictions that have modified the traditional at-will rule appear to have been motivated by conclusions that the freedom of contract underpinnings of the rule have become outdated, that individual employees in the modern work force do not have the bargaining power to negotiate security for the jobs on which they have grown to rely, and that the rule yields harsh results for those employees who do not enjoy the benefits of express contractual limitations on the power of dismissal. Whether these conclusions are supportable or whether for other compelling reasons employers should, as a matter of policy, be held liable to at-will employees discharged in circumstances for which no liability has existed at common law, are issues better left to resolution at the hands of the Legislature. In addition to the fundamental question whether such liability should be recognized ..., of no less practical importance is the definition of its configuration if it is to be recognized.... The Legislature has infinitely greater resources and procedural means to discern the public will, to examine the variety of pertinent considerations, to elicit the views of the various segments of the community that would be directly affected and in any event critically interested, and to investigate and anticipate the impact of imposition of such liability.

58 N.Y.2d at 299–301, 461 N.Y.S.2d at 234–235, 448 N.E.2d at 89–90.

■ Plaintiff's last pendent claim, grounded in a theory of contract implied in fact, is that statements in the Wesley Medical Center Employee Handbook limit the reasons for which employees can be fired, guarantee them elaborate grievance procedures to contest any proposed termination, and promise two weeks' notice of any termination (except in cases of extreme employee misconduct). Unfortunately, the record before the Court as to exactly how defendants are supposed to have breached these ostensible promises is murky, indeed; moreover, the entire employee handbook has not been placed before the Court by either party. Defendants appear to concede, however, at least for purposes of the pending motion, that they have not fully complied with the handbook's provisions; they argue, rather, that no matter what the manual says as regards job security, not one word of it is binding on them. The core of defendants' argument is that *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976), stands for the proposition that statements in an employee handbook *cannot,* as a matter of law, be legally binding upon an employer.

This Court believes, however, that defendants read the *Johnson* case far too broadly, as is obvious from the following passage:

> Where no definite term of employment is expressed, the duration of employment

depends on the intention of the parties as determined by circumstances in each particular case. The understanding and intent of the parties is to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction.

220 Kan. at 54–55, 551 P.2d 779 (quoting 53 Am.Jur.2d Master and Servant § 27, at 103). This passage certainly does not suggest that the words in an employment handbook could not be one of the relevant circumstances from which the parties' intent could be inferred—indeed, the Kansas Supreme Court has more recently indicated to the contrary, in a case involving post-termination compensation:

> Ms. Sweet was provided with a copy of Stormont-Vail's employee handbook which set forth the general terms and conditions of employment. No one seriously questions the applicability of the employee handbook to Ms. Sweet's employment. In fact, both parties rely upon the handbook to support their positions and the provisions of the handbook may clearly be considered a part of the employment contract between Ms. Sweet and Stormont-Vail.

*Sweet v. Stormont-Vail Regional Medical Center,* 231 Kan. 604, 605, 647 P.2d 1274 (1982). In this Court's view, the Kansas Supreme Court's holding in *Johnson v. National Beef Packing* can best be explained as resting on the following three uncontroversial propositions: (1) the employment relationship is terminable at the will of either party, absent a contract to the contrary, 220 Kan. at 54, 551 P.2d 779; (2) employer statements that "this is not seasonal employment" do not imply a promise of lifetime employment, *id.;* and (3) an employer has "just cause" to dismiss an employee who has refused to obey his supervisor's orders, where such conduct is expressly specified as grounds for dismissal in the employer's "company policy manual," *id.* at 56, 551 P.2d 779.[1] Thus viewed, the holdings of the Kansas Supreme Court in *Johnson* and its progenitors, far from compelling rejection of plaintiff's claim, are entirely consistent with such recent cases as *Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981); and *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), where implied-in-fact contractual limitations on an employer's freedom to fire have been recognized, and this Court is confident that the Kansas Supreme Court would adhere to the careful reasoning of the three cited cases.

The Court does not want to be misunderstood: it may well turn out that when the record is complete and the handbook provisions on which plaintiff relies are put in proper factual context, the absence of any contractual agreement regarding job security will be evident. For example, appropriate express disclaimers could make it obvious that the employer was not giving up its right to fire at will, *see, e.g., Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307, 309 (1981), or the ostensible promises made by the employer might be so vague and meaningless as to be unenforceable, *see Mattern v. Chance Manufacturing Co., supra* (employer's statement that it "welcomes an opportunity to correct any ... injustice" not an enforceable promise). By the same token, the Court wishes to make it plain that if plaintiff prevails on her claim that a contract implied in fact was breached, she will be able to recover only those damages available in contract actions—that is, she will

---

1. Dicta in *Johnson* also suggests that the provisions of a manual would not be contractually binding if they were issued long after a worker had begun employment. 220 Kan. at 55, 551 P.2d 779. While such dicta do not apply to the present case—plaintiff was given a copy of the Wesley handbook at the time she was hired— this Court also believes that the Kansas Supreme Court would be impressed by the reasoning of cases such as *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), and would repudiate its dicta in a case where the issue was squarely presented.

not be able to recover damages for humiliation, emotional suffering, etc., or recover punitive damages. *See Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 652 P.2d 665 (1982); *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95 (1980). The Court must reject, however, defendants' notion that the words an employer chooses to put in an employee handbook are legally insignificant sound and fury.

IT IS ACCORDINGLY ORDERED this 7 day of May, 1984, that defendants' motions for partial summary judgment be granted as to plaintiff's claims based on the tort of outrage, on tortious interference with a business relationship, and on a contract implied at law, but be denied as to plaintiff's claims based on a contract implied in fact.