**Richard E. JONES, Plaintiff,**

v.

**The CITY OF TOPEKA, a municipal corporation; Douglas S. Wright, individually and in his official capacity as Mayor of the City of Topeka, Kansas; Ronald S. Miller, individually and in his official capacity as Chief Administrative Officer of the City of Topeka, Kansas; and Harry L. Felker, III, individually and in his official capacity as Mayor of the City of Topeka, Kansas, Defendants.**

**Civ. A. No. 89–4175–S.**

United States District Court,
D. Kansas.

May 17, 1991.

---

Richard E. Jones, Topeka, Kan., Gregory B. King, Kansas City, Kan., for plaintiff.

Thomas E. Wright, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for partial summary judgment in this civil rights action brought by plaintiff following his termination from employment as an Assistant City Attorney in August 1988. In a motion accompanying his memorandum in opposition to defendants' partial summary judgment motion, plaintiff also seeks partial summary judgment; defendants have moved to strike plaintiff's summary judgment motion on grounds that it is untimely. In this action, plaintiff alleges that defendants' conduct in terminating plaintiff initially in August 1988 and, after plaintiff successfully arbitrated his initial termination, in removing plaintiff from the payroll again in August 1989, violated his rights to due process, equal protection and free speech; plaintiff also asserts several state common law claims. Because the court finds that oral argument would not be of material assistance in resolving the issues raised in the parties' motions, defendants' request for oral argument will be denied. D.Kan. 206(d).

*Defendants' Motion to Strike; Plaintiff's Summary Judgment Motion*

■ As an initial matter, defendants move to strike plaintiff's motion for partial summary judgment, filed January 12, 1991. In support of their motion to strike, defendants contend that plaintiff's request is untimely, given that the scheduling order entered in this case on October 24, 1989 states a June 6, 1990 deadline for the filing of dispositive motions. Alternatively, defendants contend that the request should be stricken because plaintiff has argued issues beyond those raised in defendants' partial summary judgment motion. Rule 12(f) of the Federal Rules of Civil Procedure allows the court to order stricken **"from any pleading** any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). It has been held that a Rule 12(f) motion may not be directed at motions.

*Krass v. Thomson–CGR Medical Corp.,* 665 F.Supp. 844, 847 (N.D.Cal.1987). Rather, under the Federal Rules, motions to strike are properly directed at "pleadings" as enumerated in Rule 7(a) of the Federal Rules of Civil Procedure, including:

> a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

*See Stands Over Bull v. Bureau of Indian Affairs,* 442 F.Supp. 360, 368 (D.Mont.1977) (affidavits were not "pleadings" subject to a motion to strike within the literal terms of Federal Rules). Thus, the court finds that defendants' motion to strike plaintiff's motion for partial summary judgment should be denied.

■ Notwithstanding the court's conclusion that it should not "strike" plaintiff's motion for partial summary judgment, the court still must determine whether plaintiff's motion is properly before the court for consideration. Plaintiff's motion was filed at least 6 months beyond the June 6, 1990 deadline established in the scheduling order in this case and no requests for either extension of time or for permission to file the motion out of time were filed with the court. Given that the death of plaintiff's former counsel apparently occurred before the June 6, 1990 dispositive motion deadline, *see* doc. 31 (stating that the death occurred between June 6, 1990 and July 18, 1990), plaintiff's former counsel's death does not explain plaintiff's failure to file his motion before the June 6, 1990 date. The court finds that plaintiff has not established that his failure to file a timely motion or seek extension of time constitutes "excusable neglect" under Rule 6(b) of the Federal Rules of Civil Procedure. Thus, because plaintiff's motion is not properly before the court, plaintiff's motion for entry of partial summary judgment will be denied.[1]

---

**1.** Given the court's disposition of plaintiff's partial summary judgment motion, the court does

*Defendants' Motion for Partial Summary Judgment*

 A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

The court finds that the relevant undisputed facts can be summarized as follows. Plaintiff Richard E. Jones (hereinafter, "Jones" or "plaintiff"), was employed by the City of Topeka as an Assistant City Attorney on October 1, 1973. In 1979, plaintiff was appointed Deputy City Attorney. In approximately 1983, with the concurrence of Edward Johnson, then Topeka City Attorney, and defendant Wright, plaintiff's position title changed to Chief of Litigation. Defendant Douglas S. Wright (hereinafter, "Mayor Wright"), served as Mayor of the City of Topeka from April 1983 through April 11, 1989. Defendant Ronald S. Miller served as Chief Administrative Officer for the City of Topeka from September 1985 through October 1988.

Pursuant to Charter Ordinance No. 65, which had been approved by City of Topeka voters in the fall of 1984 and became effective April 1985, Topeka's form of city government was changed to reflect a strong mayor-council form of city government. Pursuant to Charter Ordinance No. 65, among the powers and duties of the Mayor are to:

> Appoint, promote, transfer, assign and demote, discipline, layoff, suspend, discharge, or remove all appointive officers and employees of the City except as otherwise provided by applicable Kansas Statutes. All such appointive officers and employees shall be subject to demotion, layoff, suspension, discharge and removal without cause, except as otherwise provided in any negotiated memorandum of agreement, any applicable civil service regulation, or the administrative code and the personnel code.

Charter Ordinance No. 65 art. II, § 2.4.A.10. Pursuant to the charter ordinance, Mayor Wright stated that he believed that he had the authority to fire, without cause, any employee (including the plaintiff), who was not covered by a negotiated memorandum of agreement or an employment contract. Plaintiff contends that Mayor Wright's authority under the charter ordinance did not extend to him, but rather only to cabinet-level appointments, citing the opinion of Edward Johnson, who drafted the ordinance.

On May 27, 1987, the City of Topeka and the Heritage Development Company entered into a real estate purchase agreement (hereinafter referred to as the "Kenney Contract"), whereby the City agreed to sell and Heritage agreed to buy the property known as 503 Kansas Avenue. The Ken-

---

not find it necessary to accede to defendants' request for additional time to respond to plaintiff's motion. Thus, notwithstanding the court's

denial of defendants' motion to strike, defendants' request for an additional 30 days response time is denied.

ney Contract contained the following provisions:

The performance by purchaser under this contract shall be expressly contingent upon entering into a lease with the State of Kansas for tenant which is currently being negotiated between purchaser and the State of Kansas. In the event that purchaser does not obtain said lease, this agreement shall be null and void, and both purchaser and seller are released from all performance of the terms of this agreement.

The lease described in the above paragraph was not obtained by Heritage Development Company.

On December 22, 1987, the City of Topeka and the Kansas Avenue Plaza Development Company entered into a real estate purchase agreement (hereinafter referred to as the "Howard Paul contract") whereby the City agreed to sell and the Kansas Avenue Development Company agreed to buy property located at 503 Kansas Avenue, 515 Kansas Avenue, and a parking garage then being constructed behind 515 Kansas Avenue. On July 15, 1987, litigation concerning the Kenney Contract was instituted in Shawnee County District Court (case no. 87–CV–1217) and was pending when the City executed the Howard Paul contract. The Howard Paul contract included the following language:

the obligations of the seller to convey 503 Kansas Avenue under this contract is strictly conditioned upon a final determination in favor of the City in the matter now before the Shawnee County District Court and identified as Case No. 87–CV–1217.

It is disputed, however, whether the Howard Paul contract contained a provision to protect the City in the event the City was unable to convey the property known as 515 Kansas Avenue; Mayor Wright stated that no such provision existed.

On February 8, 1988, Judge Allen rendered a decision in case no. 87–CV–1217, finding that the Heritage Development Company was entitled to specific performance of the Kenney Contract and thereafter, on May 23, 1988, entered a restraining order (finding that Heritage had legal rights in a parking garage). The effect of Judge Allen's decisions was to place a cloud on the title to the 503 and 515 Kansas Avenue properties, which were the subject of the Howard Paul contract. The Howard Paul group was threatening to file a multimillion dollar lawsuit against the City if the City did not close on the Howard Paul contract. Defendants chose not to appeal Judge Allen's decision, but rather the City settled the Kenney litigation by paying $300,000 to buy out the Kenney contract in order to close on the Howard Paul contract. Mayor Wright stated that because the Howard Paul contract did not contain a clause stating that "the seller agrees to provide merchantable title" (plaintiff contends that the contract was sufficient), the City had to clear up a cloud on the title to the 515 Kansas Avenue property by entering into a "costly" settlement of the Kenney litigation in order to proceed with the Howard Paul contract. During a City Council meeting, when a question was asked as to whether the Howard Paul contract had been reviewed by anyone from the City Attorney's office, plaintiff responded that "I am embarrassed to say that my initials are on the contract."

In August of 1988, Vic Miller and Alan Bibler told Mayor Wright that the City Council was considering pulling all the money out of the City Attorney's budget for 1988, which would cause all of the staff to be let go in the City Attorney's Office. Edward Johnson served as City Attorney for the City of Topeka from August 1983 until September 1988. Following the disputes surrounding the Kenney & Howard Paul contracts, Mayor Wright requested Johnson's resignation, which Johnson thereafter tendered.

On or about August 22, 1988, Mayor Wright also requested that plaintiff Jones resign his employment. At the time that his resignation was requested, plaintiff was called into a meeting with defendants Wright and Miller. According to plaintiff's testimony, defendant Wright explained that he was asking for plaintiff's resignation as well as that of Edward Johnson and stated

"we need somebody who can provide leadership in the office, and we don't think that you can provide that leadership, so we are asking for your resignation as well." At this time, Mayor Wright also criticized plaintiff's general handling of litigation.

On or about August 23, 1988, plaintiff believes that Mayor Wright made statements to the staff of the City Attorney's office and reporter Mike Hall that plaintiff's resignation was being requested because plaintiff had caused the City to lose $300,000 by inept handling of the sale of property in the 500 block of Kansas Avenue. Plaintiff advised the Mayor on August 23, 1988, that he would not resign. On August 31, 1988, Ron Miller delivered a document to plaintiff, advising plaintiff of his termination. It is undisputed that plaintiff was not subjected to any threats of violence or harm in connection with his termination from employment. There were no racially derogatory comments made to plaintiff by any of the defendants. Plaintiff is aware of no media releases that attributed a reason for plaintiff's discharge. Plaintiff also stated in his deposition that even if he had been given the opportunity for a pretermination hearing (to which he believed himself to be entitled), he believed he still would have been terminated in August 1988.

On September 2, 1988, plaintiff prepared a grievance alleging, among other things, that (1) he did not receive progressive, consistent and reasonable discipline in accordance with City policy; (2) the letter of discharge was devoid of any documentation or explanations; and (3) his employment relationship with the City could not be severed unless the City has just cause for his immediate termination or he failed to conform his conduct following progressive discipline. On March 28–29, 1989, a hearing was held before an arbitrator concerning the September 2, 1988 grievance filed by plaintiff. During the grievance hearing, extensive testimony was devoted to the reasons supporting the decision to terminate plaintiff's employment in August of 1988, as well as plaintiff's disagreement with those reasons.

From April 11, 1989, through the present, defendant Harry L. Felker, III, has served as Mayor of the City of Topeka (hereinafter, "Mayor Felker"). On June 28, 1989, the arbitrator entered an award concerning plaintiff's grievance which provided, in part, as follows:

[T]he Arbitrator sustains the Grievance of Mr. Richard Jones and hereby orders the City to immediately reinstate Mr. Jones to his former position of employment with the City. As a remedy the Arbitrator orders the City to make whole Grievant by payment of back salary and lost benefits and to remove all documentation of this incident from the personnel file of Grievant.

In an effort to comply with the arbitrator's award, Mayor Felker unconditionally reinstated plaintiff to his employment as Chief of Litigation with the City of Topeka effective July 13, 1989. Plaintiff's back pay was calculated and defendant offered to pay the back wages in accordance with the arbitrator's award on the condition that plaintiff sign a release in which plaintiff would relinquish prospective rights to pursue any further claims against the City in connection with his August 1988 termination. By letter to Melinda Carlton (a former City administrative employee) dated August 11, 1989 from plaintiff's counsel, the City was advised that plaintiff would not sign a release.

On August 15, 1989, during an executive session of a city council meeting, the city council decided to file an application with the appropriate court to vacate the arbitrator's award and expressed its concern with plaintiff's continued reinstatement during the court proceedings. On August 22, 1989, at approximately 8:30 a.m., Mayor Felker met with Robert Oakes (an outside attorney for the City) to discuss the removal of plaintiff from the payroll during the pendency of the appeal of the arbitration award. Defendant Felker made the decision to remove plaintiff from the payroll on August 22, 1989, after his meeting with Mr. Oakes, because he and the City Council concurred with the initial decision to terminate plaintiff's employment (as made by former Mayor Wright in August 1988) and

had decided to take steps to vacate the arbitrator's award. Defendant Felker then directed that a memorandum advising plaintiff of his removal from the payroll be prepared.

On August 23, 1989, Mayor Felker was visited by Joe Hill, a reporter for Channel 49. During the meeting, Hill advised Mayor Felker of the filing of this action. It is uncontroverted that this was the first time that Mayor Felker had notice of the filing of plaintiff's civil action. On August 23, 1989, at approximately 2 p.m., Melinda Carlton hand-delivered to plaintiff the memo advising plaintiff that he would be removed from the payroll.

In support of plaintiff's claim that he was wrongfully discharged in violation of public policy, plaintiff relies upon state statutory provisions which are comparable to the fourteenth amendment to the United States Constitution. In support of plaintiff's claim for fraudulent misrepresentation, plaintiff relies upon representations made by defendants that the Charter Ordinance superseded and supplanted the personnel code. Although plaintiff filed a grievance with the City pursuant to City personnel procedures, defendant contends that plaintiff did not file a "claim" pursuant to K.S.A. 12–105b with regard to his August 1988 termination or his removal from the payroll in August 1989. It is uncontroverted that plaintiff did not seek employment with any other employer at least from December 8, 1989 through March 30, 1989.

On August 24, 1989, the City filed an application to vacate the arbitrator's award or for modification and correction of award in Shawnee County District court, docketed as case no. 89–CV–1511. In January 1990, the parties entered into an agreement whereby they agreed that plaintiff would be paid the sum of $43,086.66 (such amount to reduce any compensatory damages awarded in this action) and that the City agreed to waive judicial review of the arbitrator's award. In addition, plaintiff agreed that "his removal from the payroll will continue during the pendency of civil action no. 89–4175–S and specifically waive[d] any claim to reinstatement which are dependent upon the arbitrator's award entered in grievance no. 82–00295." On January 16, 1990, an "Agreed Order of Dismissal" was filed in case no. 89–CV–1511, Shawnee County District Court, dismissing the action; further, the parties expressly agreed to waive any right to judicial review of the arbitration award.

In their present motion, defendants do not seek summary judgment with regard to plaintiff's claims under 42 U.S.C. § 1983 that he was terminated because of his race. Defendants do, however, seek summary judgment with regard to plaintiff's claims under section 1983 that his August 1989 removal from the payroll violated his first amendment rights. Defendants further contend that they are entitled to summary judgment with regard to plaintiff's claims under section 1983 that the August 1989 termination violated plaintiff's due process or liberty interests. Further, defendants contend that they are entitled to summary judgment on plaintiff's claim that his employment was terminated in violation of 42 U.S.C. § 1981. Finally, defendants seek summary judgment on plaintiff's claims under state law.

*Plaintiff's Section 1983 Claims Based Upon the August 1989 Termination*

Defendants move for summary judgment on plaintiff's claims that his removal from the payroll in August 1989 violated his first amendment rights, *i.e.*, of speech and/or to petition the government for redress of grievances. The court finds that defendants' motion as to plaintiff's first amendment claims should be granted for several reasons. First, the court does not find that any first amendment rights are implicated here. Neither party has cited any cases directly addressing the specific question of whether a public employer's decision to terminate an employee pending appeal of an unfavorable arbitration decision (when the employee refuses to sign a release and thus, settle the original dispute) infringes upon first amendment interests. In the court's view, the cases cited by plaintiff in support of his position, *e.g.*, *Baird v. State Bar of Arizona*, 401 U.S. 1,

91 S.Ct. 702, 27 L.Ed.2d 639 (1971) and *Schneider v. Smith,* 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968) (both dealing with freedom of association), are not on point.

The most analogous case is cited in defendants' reply brief, namely *Blackwell v. City of St. Charles,* 726 F.Supp. 256 (E.D. Mo.1989), *aff'd,* 917 F.2d 1150 (8th Cir. 1990). In that case, the court dismissed plaintiffs' claim that the city's requirement that plaintiffs (who were opposed to annexation) sign a "petition for voluntary annexation" as a precondition to being allowed access to city water and sewer systems violated first amendment rights. The *Blackwell* court reasoned that even if plaintiffs' characterization of the issue as "political speech" were accurate:

> the first amendment is not implicated by a rational requirement of assent to a particular proposition in order to obtain a benefit to which the would-be recipient has no legal entitlement. In the freedom of religion context, the Supreme Court has noted the importance of the distinction between governmental compulsion and conditions relating to governmental benefits. The same distinction is applicable in the sister first amendment context of free speech....
>
> The consent to annexation requirement is not compulsory in the Constitutional sense. It is 'forced' upon plaintiff only in the sense that it is a contract term which they must accept in order to obtain the city's agreement to provide them with water. Conversely, plaintiffs may reject the required assent as too high a price for the benefit they seek. In the language of *Bowen v. Roy,* [476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) ], it is a 'government regulation that indirectly and incidentally calls for a choice between securing a governmental benefit and adherence to [political preferences].' *Bowen,* 476 U.S. at 706 [106 S.Ct. at 2155].

726 F.Supp. at 258 (further citation and footnote omitted).

On the undisputed facts of this case, Jones was unconditionally reinstated to his former position on July 13, 1989, in partial compliance with the arbitrator's award. As a condition to paying the backpay award (rather than appealing the award), defendants sought to obtain a release from Jones. When Jones refused to sign such a release, defendants decided to appeal or move to vacate the arbitrator's award and to remove Jones from the payroll. Similarly to *Blackwell,* the governmental entity, the City of Topeka, chose to extract an agreement from Jones as a precondition to his receipt of a governmental benefit. Although Jones chose not to comply, the court cannot find that under the undisputed facts and the law as presented to the court, that this gives rise to a first amendment claim. *See also Shaheen v. B.F. Goodrich Co.,* 873 F.2d 105, 107 (6th Cir. 1989) (stating that "public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action" ... and "public policy weighs in favor of allowing voluntary settlement").

■ Further, this case is distinguishable from other first amendment cases of which the court is aware because this case involves purely matters of personal concern to Jones rather than matters of public concern. Generally, a public employee's grievance is "protected under the First Amendment only if it related to a matter of public concern." *See Renfroe v. Kirkpatrick,* 722 F.2d 714, 715 (11th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984). In elaborating on its concern not to "constitutionalize" every public employee grievance, the United States Supreme Court in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) held:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690. Given that Jones' has presented no matter of "public concern," and no "unusual circumstances" are present here, the court finds that plaintiff's claim falls within the above-quoted rule in *Connick;* thus, his claim does not implicate the first amendment.

The court's conclusion that no protected speech is involved here dictates summary judgment on plaintiff's retaliation claim as well. *See Wren v. Spurlock,* 798 F.2d 1313, 1317 (10th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987) (stating that a plaintiff in a retaliation case must, as a first element of his or her case, "show that the speech was constitutionally protected, *i.e.,* the speech related to matters of public concern *and* the speaker's rights outweighed the state's right to control its employees....") (emphasis in original). The court finds that plaintiff's remaining arguments are without merit. Thus, the court finds that defendants' are entitled to summary judgment with regard to plaintiff's first amendment claims in connection with the August 1989 termination.

■ The court also finds that, on the undisputed facts, defendants' motion for summary judgment should also be granted as to plaintiff's claim under 42 U.S.C. § 1983 that he was deprived of due process in August 1989 when, after a brief reinstatement pursuant to the arbitrator's decision, he was again removed from the City payroll pending appeal of the arbitrator's decision. Plaintiff contends that he was entitled to a pretermination hearing in connection with both the August 1988 and August 1989 terminations. As previously noted, plaintiff's due process claims in connection with the August 1988 termination are not at issue here, but rather will remain for trial. With regard to the August 1989 termination, which the court views as "inextricably tied" by virtue of the arbitration to the initial termination in August 1988, two reasons were given for Jones' removal. First, Jones was removed because, in the absence of a signed release from Jones, the City planned to appeal the arbitrator's award *pursuant to which Jones had been reinstated.* The parties

have since agreed, in the January 1991 agreement, that the arbitration award shall be without effect. Second, Jones was removed for the same reasons as were previously stated in connection with the August 1988 termination, reasons which were fully discussed at the March 28–29, 1989 hearing of Jones' grievance which, in fact, preceded Jones' second termination. Thus, on these undisputed facts, the court finds no basis for plaintiff's due process claim.

■ Defendants also seek summary judgment with regard to plaintiff's claim under section 1983 that the August 1989 removal from the City payroll violated protected liberty interests. Specifically, plaintiff alleges that Mayor Wright disclosed to the staff of the City Attorney's office and Mike Hall, a *Topeka Capitol Journal* reporter, that plaintiff had been requested to resign because he had caused the City to lose $300,000 by his inept handling of the sale of property in the 500 block of Kansas Avenue. As stated by the Tenth Circuit Court of Appeals in *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988), "the concept of liberty recognizes two particular interests of a public employee: (1) the protection of his good name, reputation, honor, and integrity, and (2) his freedom to take advantage of other employment opportunities." (quoting *Miller v. City of Mission, Kansas,* 705 F.2d 368 (10th Cir.1983)).

However, courts have generally held that only charges of serious misconduct, such as dishonesty or immorality, satisfy the requirement of impugning a person's "good name, reputation, honor, and integrity." *See Adams v. Walker,* 492 F.2d 1003, 1008 (7th Cir.1974) (discussing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Liberty is not infringed, however, by denigrating a public employee's competence, as would be the case here in Mayor Wright's alleged statements concerning plaintiff. *See Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985); *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366 (9th Cir.1976). Further, plaintiff has not alleged or presented any evidence to the effect that Mayor Wright's alleged statement foreclosed other employ-

ment opportunities. *See Conaway*, 853 F.2d at 794–95. Thus, defendants' motion for summary judgment on plaintiff's liberty-based claim under section 1983 will be granted.

*Plaintiff's Discharge Claims under Section 1981*

■ The court finds that defendant's motion for summary judgment with regard to plaintiff's claim that his employment was terminated in violation of 42 U.S.C. § 1981 must also be granted. In *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973 (10th Cir.1991), the Tenth Circuit Court of Appeals held that, in light of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), discriminatory discharge claims cannot be maintained under section 1981. Although plaintiff attempts to bring his claim within *Patterson* by characterizing his reinstatement and subsequent removal from the payroll in August 1989 as contract formation, the court finds that this interpretation unreasonably strains both the uncontroverted facts and the post-*Patterson* law that section 1981 is narrowly construed with regard to such claims.[2] Thus, defendants' motion for summary judgment with regard to plaintiff's section 1981 claims will be granted.

*Plaintiff's State Law Claims*

■ Similarly, the court finds that defendants are entitled to summary judgment with regard to plaintiff's claims under state law for wrongful discharge, the tort of outrage, tortious interference with contract, and fraudulent misrepresentation. First, it is uncontroverted that only one

written notice or "claim" was filed by plaintiff prior to this action, *i.e.*, the September 2, 1988 grievance. It is also uncontroverted that the September 2, 1988 grievance does not comply with the specific requirements of K.S.A. 12–105b(d).[3] Specifically, the grievance does not provide notice of the "nature and extent of the injury claimed to have been suffered" by plaintiff with respect to his state law claims; the grievance also does not contain a "statement of the amount of monetary damages that it being requested." Compliance with K.S.A. 12–105b has been interpreted as a condition precedent to filing suit. *See, e.g., Hibbs v. City of Wichita*, 176 Kan. 529, 532–33, 271 P.2d 791 (1954). Further, given the Kansas Court of Appeals' recent decision in *Tucking v. Board of Jefferson County Comm'rs*, 14 Kan.App.2d 442, 796 P.2d 1055 (1990) in which the court affirmed the trial court's dismissal of plaintiff's complaint based upon his failure to specify a required element under the statute, *i.e.*, the amount of damages sought or the type of injury suffered, plaintiff's argument based upon substantial compliance with the statute, which was rejected by the court in *Tucking*, must also be rejected here.

■ Alternatively, even notwithstanding plaintiff's failure to comply with the notice requirements of K.S.A. 12–105b(d), the court finds that, on the undisputed facts, defendants are entitled to summary judgment on plaintiff's state common law claims. Although Kansas courts have recognized an exception to the employment-at-will doctrine for terminations that violate a clear public policy, *see Murphy v. City of Topeka–Shawnee County Dept. of Labor*

---

2. For example, in this case it is uncontroverted that plaintiff was unconditionally reinstated to his formerly-held position in accordance with the arbitrator's award. Plaintiff's termination occurred only after the dispute arose over the backpay award and plaintiff's refusal to sign the release. Thus, the termination must be characterized as the type of "post-formation" conduct which is not actionable under *Patterson*.

3. K.S.A. 12–105b(d) (Supp.1990) requires that a written notice must be filed with the clerk or governing body of the municipality prior to the commencement of an action; such notice "shall" contain the following:

(1) The name and address of the claimant and the name and address of the claimant's attorney, if any;

(2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of;

(3) the name and address of any public officer or employee involved, if known;

(4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and

(5) a statement of the amount of monetary damages that is being requested.

*Serv.*, 6 Kan.App.2d 488, 630 P.2d 186 (1981) (recognizing an employee's cause of action for termination in retaliation for filing a workers' compensation claim), it is not clear that Kansas courts would recognize a cause of action under the "public policy exception" in a case such as this one in which an employee, who refused to sign a release, was removed from a payroll pending appeal of an arbitration award.

The court finds that plaintiff's reliance on this court's decision in *White v. General Motors Corp., Inc.*, 699 F.Supp. 1485 (D.Kan.1988), *aff'd in part, vacated in part*, 908 F.2d 669 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991), is misplaced. The court's language in *White* to the effect that the plaintiffs could have chosen not to sign the proposed releases and filed a wrongful discharge claim, 699 F.Supp. at 1487, does not, in the court's view, stand for the general proposition plaintiff urges, *i.e.*, that an employer's conduct in requiring an employee to sign a release or face termination always gives rise to a wrongful discharge claim. To the contrary, in rejecting plaintiff's argument that releases should be void as against public policy, this court stated that "the law of Kansas favors the settlement of past claims...." *Id.* at 1488. Further, any wrongful discharge claim referred to in *White* would ostensibly be based upon the plaintiffs' "whistle-blowing activities;" activities which have not been alleged in plaintiff Jones' case. Finally, it has been held that where an alternative remedy is available (here, a section 1983 equal protection claim based upon both discharges), no claim under the public policy exception may be asserted. *See Tarr v. Riberglass, Inc.*, 115 L.R.R.M. (BNA) 3688, 1984 WL 1481 (D.Kan.1984). Thus, assuming *arguendo*, that plaintiff could somehow overcome his failure to comply with the statutory notice requirement, he has failed to come forward with factual or legal support for a wrongful discharge claim in this case.

 With regard to plaintiff's claim under the tort of outrage, it is clear on the undisputed facts of this case that plaintiff cannot meet the high threshold requirement for "outrageous" conduct for this tort. Whether the conduct alleged is sufficiently "outrageous" is for the court to determine in the first instance. *See Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981). In this case, it is undisputed that plaintiff was not subjected to any threats or racial remarks. Thus, on the undisputed facts before the court, no claim under this tort can be maintained in this case. *See, e.g., Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan. 1984). Similarly, plaintiff's tortious interference with contract claim cannot be maintained because plaintiff has failed to allege third party interference with his employment contract with the City of Topeka. As stated in *Fletcher*, "[i]t is well established that an employer cannot be brought to task for interfering with its own relations vis-a-vis its employees...." 585 F.Supp. at 1262 (citations omitted). In this case, it is undisputed that defendants Wright and Felker were acting within the scope of their respective employments as Mayor when they made the decisions, in August 1988 and in August 1989, respectively, to terminate plaintiff's employment. *See id.* Finally, plaintiff's fraudulent misrepresentation claim, which is based upon plaintiff's allegation that the City informed him that the Charter Ordinance superseded the personnel code, cannot be maintained because plaintiff, who has consistently opposed the City's position, has failed to allege that he reasonably relied and acted upon this representation, an essential element of this claim. *See Sipes v. Crum*, 204 Kan. 591, 464 P.2d 1, 6 (1970) (citation omitted). Thus, defendants' motion for partial summary judgment with respect to plaintiff's state law claims will be granted.[4]

---

4. As stated by defendants, the following issues remain for trial in this case: "(1) whether defendants' conduct in terminating plaintiff's employment in August of 1988 and his subsequent removal from the payroll in August 1989 violat-
ed the equal protection clause of the fourteenth amendment; (2) whether plaintiff was denied a property interest without due process when his employment was terminated in August 1988; and (3) whether the individual defendants are

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to strike (doc. 51) plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (doc. 43) is denied.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (doc. 28) is granted, as consistent with this Memorandum and Order.

entitled to qualified immunity or whether any other defenses raised by defendants preclude or

limit relief herein." Defendants' Memo. in Support of Partial Summary Judgment at 32.