Michael G. JOHNSON, Plaintiff,

v.

Jon WEFALD, individually, and in his official capacity as President of Kansas State University; James R. Coffman, individually, and in his official capacity as Provost of Kansas State University; and Kansas State University, Defendants.

Civ. A. No. 90–2210–V.

United States District Court, D. Kansas.

June 3, 1991.

Rodney C. Olsen, Morrison, Frost and Olsen, Manhattan, Kan., for plaintiff.

Dorothy L. Thompson, Manhattan, Kan., for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Defendants have filed a motion for summary judgment (Doc. 40) pursuant to Fed. R.Civ.P. 56(b). Because oral argument would not be of material assistance to the resolution of the motion, plaintiff's request for oral argument (Doc. 56) is denied. D.Kan.Rule 206(d). For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

Plaintiff Michael G. Johnson has sued Kansas State University ("KSU"), Jon Wefald, individually and in his official capacity as President of KSU, and James R. Coffman, individually and in his official capacity as Provost of KSU, alleging violations of 42 U.S.C. § 1983 and the First, Fifth and Fourteenth Amendments. Plaintiff claims that he was reassigned to another position and eventually terminated from employment with KSU because of his decision to run as a Democratic candidate for the Kansas Senate. Plaintiff also asserts various pendent state law claims against each of the defendants.

## I. SUMMARY JUDGMENT STANDARDS

In considering a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only when the evidence indicates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The pertinent uncontroverted facts established by the parties in accordance with D.Kan.Rule 206(c) appear as follows. Plaintiff was appointed on June 18, 1980, to the position of Assistant to the President of KSU. Plaintiff's written appointment to this position states in part that the appointment "may ... lead to permanent tenure" and that tenure will "accrue" after six years of service "unless notice to the contrary shall have been given in accordance with Board of Regents regulations on notification of non-reappointment."

Effective June 1, 1982, President Duane Acker adopted a "Policy Statement for Unclassified Positions, Other Than Those in Instruction, Research, Extension and Library, and for Appointees to Those Positions." Section II.C. of this statement provides in part that:

Persons who have not been granted or do not hold tenure as of June 1, 1982 and who have before that date been in probationary years for "administrative tenure" are considered on June 1, 1982 to hold appointments to regular positions. There will not be an evaluation or consideration for "administrative tenure."

Section II.A. of the Policy Statement then provides that for "persons holding regular appointments" who have completed at least two years of service, twelve month's notice of nonreappointment must be provided, if the individual will not be reappointed. As of June 1, 1982, plaintiff had not yet completed his second year of service to be credited toward "administrative tenure."

In June of 1988, plaintiff was appointed to the position of Assistant for Governmental Relations in the President's Office. Plaintiff's written appointment states in part that the appointment "does not lead to consideration for tenure" and is "subject to reassignment of duties upon notice by the appointing administrator" and is further "subject to Section II.C. of the President's Policy Statement. . . ."

In the spring of 1988, plaintiff had several conversations with President Wefald and Provost Coffman regarding his decision to run for the Kansas State Senate. The University's stated policy is to permit unclassified employees such as plaintiff to run for partisan political positions, including running as a partisan candidate for the State Legislature. In addition, no statements were made to plaintiff that his proposed candidacy would adversely affect his employment at KSU or that it could lead to his termination.

On June 10, 1988, plaintiff officially filed to run as a Democratic candidate against the incumbent Republican senator. After learning of plaintiff's candidacy, two Republican legislators expressed concern to President Wefald about KSU's permitting plaintiff to remain in his current position at KSU while campaigning for a position in the Senate. President Wefald then decided to remove plaintiff from his position as Assistant to the President for Governmental Affairs for the stated purpose of maintaining KSU's non-partisan image. On July 5, 1988, plaintiff was reassigned to the position of Temporary Assistant to the Dean of Arts and Sciences. Plaintiff ultimately lost the election on November 8, 1988.

After the election, plaintiff and Provost Coffman discussed the possibility of returning plaintiff to his former position as Assistant to the President for Governmental Relations. However, in January of 1989, plaintiff was reassigned to the Division of Continuing Education to work with the Kansas City Regional Council on Higher Education.

On May 17, 1989, Provost Coffman assigned plaintiff to the position of Associate Specialist in the Division of Continuing Education. On this same date, plaintiff was notified that his salary would be reduced, that he would no longer receive car payments, and that he would not be reappointed after the 1989–1990 contract year. No reasons were given for plaintiff's non-reappointment.

On October 2, 1989, plaintiff filed a grievance complaint against President Wefald and Provost Coffman with KSU's General Faculty Grievance Board. A hearing on plaintiff's grievance was held on November 18, 1989. The Grievance Board's report, dated December 20, 1989, did not recommended that plaintiff be reinstated to his original position as Assistant to the President for Governmental Relations and plaintiff was not reinstated to any position with KSU.

## III. DISCUSSION

In Count I of his complaint, plaintiff alleges that President Wefald individually violated plaintiff's First Amendment rights in that plaintiff was removed from the position of Assistant to the President for Governmental Relations as a result of plain-

tiff's filing as a Democratic candidate for the Senate. In Count II of his complaint, plaintiff alleges that Provost Coffman individually violated plaintiff's First Amendment rights in that plaintiff was reappointed for the 1989–90 fiscal year at a reduced salary and eventually terminated as a result of his Democratic candidacy. Plaintiff further alleges, in Count III of his complaint, that defendant KSU, and the individual defendants acting in their official capacities, maintain a policy, practice and custom which violates his First, Fifth and Fourteenth Amendment rights and which unconstitutionally deprived him of his property interest in continued employment with the University. Defendants contend that it was proper for them to remove plaintiff from his position since plaintiff's candidacy allegedly interfered with the assigned duties of his position. We will first deal with the issue of the University's immunity from suit.

## A. Eleventh Amendment Immunity

■ For purposes of Eleventh Amendment immunity, KSU is a state agency. Thus, plaintiff's section 1983 claim, insofar as it seeks monetary relief, and all of his pendent state law claims against KSU are barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Likewise, plaintiff's claims against the individual defendants in their official capacities are also barred. However, plaintiff is entitled to seek prospective injunctive relief, including reinstatement, under his section 1983 claim against KSU and the individual defendants in their official capacities. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

## B. First Amendment Claims

■ Plaintiff has alleged, in effect, two separate First Amendment claims. The first claim is one of political discrimination. This claim is based on the fact that plaintiff ran as a Democratic candidate against an incumbent Republican senator; that plaintiff perceives the Republican party to be the "ruling" party in the State of Kansas;

that the "complaints" concerning plaintiff's candidacy came from Republican legislators; and that Sue Peterson, who replaced plaintiff as the Assistant to President for Governmental Relations, is a Republican who served as an advisor to Republican Governor Mike Hayden immediately prior to accepting the position at KSU. We find that there is a question of fact as to whether plaintiff's political affiliation with the Democratic party was a motivating factor in the University's decision to reassign and eventually terminate plaintiff.

■ Plaintiff's second First Amendment claim is based on plaintiff's right to run for political office. The court finds that plaintiff's candidacy for public office implicates a First Amendment interest. *See Reeder v. Kansas City Board of Police Comrs.*, 733 F.2d 543, 547 (8th Cir. 1984) ("No one would contend that Congress or a state legislature could forbid a member of the public from becoming a candidate for the state Senate."). However, defendants argue, and the court recognizes that "government may impose on its own employees rather substantial restrictions on political activity which is open without question to the citizenry at large." *Id.* (citations omitted).

In this case, defendants argue that since the University had the ability to prohibit all its employees from running for legislative office, it had the power *a fortiori* to reassign and terminate plaintiff for having campaigned for the State Senate. We find this argument unpersuasive. First, it is not clear that the University can constitutionally restrict all its employees in such a manner. Secondly, the University does not have an even-handed, blanket prohibition on running for political office. Indeed, its written policy and regulations specifically permit all employees to run for public office. From the facts before us, the University's "prohibition" on political candidacy was applied solely to the plaintiff, and only after he had announced his decision to run. Thus, the court finds inapposite the cases cited by the parties which address the constitutionality of broad legislative restric-

tions on the First Amendment rights of public employees.

■ In First Amendment cases, the governmental employer's interest "in promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), must be balanced against the interests of the employee as a citizen in exercising his First Amendment rights. *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

The parties do not cite, and the court has not discovered, decisions addressing the precise factual situation presented in the case at bar. However, the court finds that the political patronage dismissal cases cited by the parties are analogous. In analyzing the Supreme Court's decision in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Tenth Circuit stated that:

> the ultimate constitutional question is whether party affiliation is an appropriate requirement for the effective performance of the public office involved. And while the question whether a policy-making or confidential relationship is involved may be relevant, such categories are no longer dispositive. Moreover, the defendant must bear the burden of proof on the issue whether party affiliation ... was an appropriate requirement for the effective performance of the public office involved, under the *Branti* standard. The burden on the plaintiffs is to prove that their discharge or threat of discharge was for the reason that they were affiliated with [the political party previously in power].

*Dickeson v. Quarberg*, 844 F.2d 1435, 1441 (10th Cir.1988) (citations omitted).

In the case at bar, defendants contend that the University has an interest in maintaining a non-partisanship image and that

plaintiff's campaign for public office destroyed this image. Thus, the focus is not on plaintiff's association with a particular political party, but rather on his decision to become "partisan" by running for public office.

With this focus in mind, it is uncontroverted that plaintiff's decision to run for the State Senate was a substantial motivating factor in the University's decision to remove plaintiff from the position of Assistant for Governmental Relations. Absent a showing by defendants that plaintiff's "non-partisanship" was required for the effective performance of his job, this reassignment would be in violation of his First Amendment rights. We find that there is a genuine issue of material fact as to whether plaintiff's candidacy would have interfered with his effectiveness as Assistant to the President for Governmental Relations either during his campaign or after he had lost the election.[1]

■ As for plaintiff's eventual non-reappointment/termination from University employment, there is a genuine question of fact as to whether the termination was motivated by plaintiff's decision to run for public office or by some other reason. Therefore, for the reasons stated above, summary judgment on plaintiff's First Amendment claims is denied.

### C. Equal Protection Claim

■ Plaintiff's equal protection claim is raised in Count III of his complaint. Plaintiff argues that defendants singled him out by reassigning and eventually terminating him for having challenged an incumbent member of the legislature, even though, as stated above, this type of activity was specifically permitted by KSU regulation. Defendants argue that plaintiff's job is unique and that plaintiff has not presented evidence of other individuals similarly situated

---

1. With respect to his alleged ineffectiveness, plaintiff has presented uncontroverted evidence of other persons who unsuccessfully campaigned for seats in the Kansas legislature in 1988 and then became legislative liaisons or lobbyists following their election defeats. Thus, while plaintiff's candidacy may have interfered

with his job duties during the campaign, it is not clear, and the court cannot rule as a matter of law, that plaintiff's candidacy should have legitimately prevented him from returning to the position of Assistant to the President for Governmental Affairs in 1989.

to plaintiff who were treated differently. We find that KSU's regulation permitting political activities has not been applied in even-handed manner in this case. However, we conclude that there is a material question of fact as to whether plaintiff's position was unique such that the University had a legitimate reason for treating plaintiff differently from other KSU employees. Therefore, summary judgment on plaintiff's equal protection claim is denied.

### D. Due Process Claim

■ In order to determine whether plaintiff was deprived of a vested property interest without due process of law, we must first find that plaintiff had a property interest in his continued employment with the University. We find that plaintiff was an employee-at-will and that therefore, he had no property interest in his continued employment and his due process rights were not violated.

Section II.C. of the President's Policy Statement provides extra procedural protections for employees who have accumulated five years of service to be credited toward administrative tenure.[2] Since plaintiff had more than five years of service with KSU when he was reassigned to another position in July of 1988, plaintiff argues that he was entitled to these extra protections, including the right to expect to be reappointed unless the position is eliminated or a poor performance evaluation is received. Thus, plaintiff concludes that he had an employment contract with the University and a corresponding property interest in his continued employment. We disagree.

Section II.C. of the Policy Statement explicitly states that "[p]ersons who have not been granted or do not hold tenure as of June 1, 1982 ... are considered on June 1, 1982 to hold appointments to regular posi-

tions." It also states that "[t]he University has a significant obligation and responsibility to appointees *in this category* who have completed five years of employment...." Section II.C. of Policy Statement (emphasis added). Thus, we conclude that the plain meaning of the Policy Statement is that the additional protections of section II.C. apply only to employees who had already accumulated five years of service *prior* to June 1, 1982, the effective date of the Policy Statement.

The court finds that, as of June 1, 1982, plaintiff had accumulated only two years or less of service and thus, is not entitled to the extra protections found in section II.C. Moreover, in accordance with the explicit provisions of section II.C., plaintiff became a "regular appointee" who would no longer be eligible for administrative tenure after June 1, 1982. Finally, plaintiff has presented no other evidence of his entitlement to continued employment. Therefore, we conclude that plaintiff was an at-will employee at all relevant times, despite his having more than five years of service with the University.

Since plaintiff was an at-will employee, we find that he had no employment contract with the University and no property interest in his continued employment. For this reason, we do not need to consider whether plaintiff was provided adequate due process at his grievance hearing or otherwise given adequate notice and an opportunity to be heard.

### E. Pendent State Law Claims

As stated above, plaintiff's state law claims against defendant KSU are barred by the Eleventh Amendment. Plaintiff also asserts the state law claims of malicious discharge, wrongful discharge, and tortious interference with plaintiff's em-

---

**2.** Section II.C. provides in pertinent part that appointees "who have completed five years of employment and who have performed well and have made a high caliber contribution to the University ... may expect to be reappointed ... unless program discontinued or financial stress result in elimination of the position or a per-

formance evaluation results in non-reappointment." If a position is eliminated, "the University will make every effort to place the occupant in another suitable position." Such appointees may appeal their non-reappointment and "[t]he burden is on the University to provide reasons for non-reappointment."

ployment contract against defendants Wefald and Coffman individually.[3] For the reasons stated below, summary judgment is granted in favor of defendants on these claims.

(1) Malicious Discharge and Wrongful Discharge

 In both his malicious discharge and wrongful discharge claims, plaintiff alleges that he was discharged in retaliation for exercising his constitutional right to run for office and that this was in violation of Kansas public policy. However, we find that plaintiff has an adequate federal remedy for his termination under section 1983. Therefore, we decline to create an exception to the employment-at-will doctrine for employees terminated in violation of Kansas public policy. *Polson v. Davis*, 635 F.Supp. 1130, 1149–50 (D.Kan.1986), *aff'd*, 895 F.2d 705 (10th Cir.1990). Therefore, plaintiff's claims for malicious discharge and wrongful discharge are dismissed.

(2) Tortious Interference with an Employment Contract

Since we find above that plaintiff was an employee-at-will and had no employment contract, he cannot maintain a cause of action for tortious interference with such a contract. In addition, there is no evidence that defendants Wefald and Coffman were acting outside the scope of their employment. Thus, we may conclude that their acts and motives are legally attributable to the corporation and therefore, there is no liability for interference. *Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984). Therefore, summary judgment on plaintiff's tortious interference claim is granted in favor of defendants.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 40) is granted in part and denied in part.

IT IS SO ORDERED.

---

**3.** The court notes that plaintiff has abandoned his state law claims based on the torts of outrage and fraud.