**Gary L. ALEXANDER and Yvonne Alexander,**

v.

**FUJITSU BUSINESS COMMUNICATION SYSTEMS, INC., Fujitsu America, Inc. and William R. Miller.**

Civ. No. 92–303–JD.

United States District Court, D. New Hampshire.

March 24, 1993.

Francis G. Murphy, Jr., Manchester, NH, for plaintiffs.

James P. Bassett, Concord, NH, Warren M. Davison, Baltimore, MD, for defendants.

ORDER

DiCLERICO, Acting Chief Judge.

Plaintiffs Gary L. Alexander ("Mr. Alexander") and Yvonne Alexander ("Ms. Alexander") have filed this action against defendants Fujitsu Business Communications Systems, Inc. ("Fujitsu"), Fujitsu America, Inc. (collectively, the "corporate defendants") and William R. Miller ("Mr. Miller"). Plaintiffs' complaint is in four counts: misrepresentation, intentional interference with Mr. Alex-

ander's employment, violations of the Employee Retirement Income Security Act ("ERISA") and loss of consortium. Plaintiffs have alleged jurisdiction over the corporate defendants in this action pursuant to ERISA, 29 U.S.C.A. §§ 1001 *et seq.* (West 1985 & Supp.1992) and 28 U.S.C.A. § 1331 (West Supp.1992). Additionally, plaintiffs have alleged jurisdiction over Mr. Miller based on diversity of citizenship. 28 U.S.C.A. § 1332 (West Supp.1992).

The following motions are currently pending before the court: plaintiffs' motion to amend their complaint and defendants' motions to dismiss the action for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). After summarizing the facts of this action, the court considers each motion in turn.

### Background

The following allegations are set forth in the complaint. Between June 1967 and April 1989, Mr. Alexander was an employee of GTE. In April 1989, Fujitsu took over control of GTE and transferred Mr. Alexander to its payroll as an employee. Under the terms of its agreement with GTE, Fujitsu gave GTE employees credit for years of service rendered to GTE prior to Fujitsu's takeover. Between November 1989 and August 1990, Mr. Alexander was Fujitsu's service supervisor, construction manager and acting project manager for Fujitsu's Northeast region. In August 1990, Mr. Alexander was named Fujitsu's project manager for the Dartmouth Medical Center project in Lebanon, New Hampshire. Defendant Mr. Miller, Fujitsu's Northeast Region Director, was Mr. Alexander's direct supervisor between November 1989 and December 1990.

In May 1990, Mr. Miller ordered Mr. Alexander to submit enhanced expense statements for claims he had not actually incurred. Mr. Alexander refused to comply with this order at first but ultimately did so after Mr. Miller threatened his job security and his ability to travel frequently to North Carolina to visit his ailing wife. He did not know until after his termination that Mr. Miller had personally profited from his travel expense money. Rather, Mr. Alexander believed that Mr. Miller was authorized to purchase office equipment with the money and was actually purchasing office equipment with it.

On February 8, 1991, Joseph Gartman, Fujitsu's manager of project managers, informed Mr. Alexander that his employment would be terminated because he had submitted erroneous expense statements. Mr. Alexander told Mr. Gartman that he had only reported expenses and trips that Mr. Miller had directed him to report, that Mr. Miller had told him to take the trips, and that Mr. Miller had reviewed, approved and signed the expense statements. Mr. Gartman told Mr. Alexander if he were to write a request that he be given until February 11, 1991 to resign, Mr. Gartman would pursue termination options with the Human Resources Department ("Human Resources"). Mr. Alexander wrote on a memo Mr. Gartman presented to him that he was requesting until February 11 to be given the option of resigning or being terminated but Mr. Gartman did not give him a copy of this memo.

On February 11, Mr. Gartman telephoned Mr. Alexander to inform him that Human Resources was reviewing his situation and that he was still considered to be on the Fujitsu payroll. On February 12, Mr. Gartman informed Mr. Alexander by telephone that his only option was to resign and he would not be laid off nor given any kind of severance package. Mr. Gartman also directed Mr. Alexander to go to Fujitsu's Woburn, Massachusetts office the next morning to fax his resignation letter to company headquarters in Phoenix, Arizona. On the morning of February 13, Mr. Alexander fell on the ice and reinjured his back. His doctor ordered him not to work until at least March 7 because of his injury.

On February 17, Mr. Gartman came to Mr. Alexander's apartment and gave him a letter. The letter had been typed on February 13 but backdated to February 8. The letter stated that Mr. Alexander was being terminated because he had not submitted a letter of resignation. The letter also indicated Mr. Alexander's employment was being terminated because of his misconduct and his abuse of company policy regarding expense state-

ments. Mr. Alexander told Mr. Gartman he considered the termination wrongful and, furthermore, he could not be terminated at the time because he was disabled. Mr. Gartman told him to resolve the issue with officials from Human Resources.

Mr. Alexander spoke with Mike Santora from Human Resources on February 18. Mr. Alexander informed Mr. Santora of his disability and asked that a representative be sent to his residence to meet with him and verify the seriousness of his condition. No one from Human Resources complied with this request. Furthermore, Human Resources, contrary to its established procedure, did not forward paperwork for him to fill out in connection with his entitlement to health and disability benefits. On or about June 26, 1991, after denying Mr. Alexander's last request for reconsideration of his termination, Fujitsu officials told Mr. Alexander he was fired because he was aware another employee—Mr. Miller—was misappropriating funds from Mr. Alexander's travel allowance payments but had failed to report this to Fujitsu management.

### Discussion

#### A. Plaintiffs' Motion to Amend Complaint

■ Fed.R.Civ.P. 15(a) provides, in relevant part, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." Because defendants have filed no responsive pleading, plaintiffs' motion to amend their complaint must be granted as of right.

> The term "a responsive pleading" as used in Rule 15(a) must be defined by reference to Rule 7(a), which defines "pleadings" as including only the complaint, the answer, the reply, the answer to a cross-claim, the third-party complaint and answer, and, if ordered by the court, a reply to an answer or a third-party answer. Thus a motion to dismiss is not a "responsive pleading" within the meaning of Rule 15, and pleadings may be amended thereafter, as a matter of course.

3 James W. Moore and Richard D. Freer, *Moore's Federal Practice* ¶ 15.07[2] (2d ed. 1992) (footnotes omitted); *see also Mc-*

*Donald v. Hall,* 579 F.2d 120, 121 (1st Cir. 1978) (citations omitted) ("Neither a motion to dismiss nor one for summary judgment is a responsive pleading for purposes of Rule 15(a)."); *cf. Royal Business Group, Inc. v. Realist, Inc.,* 933 F.2d 1056, 1066 (1st Cir. 1991) (citing Fed.R.Civ.P. 15(a), the court noted "[t]he plaintiffs had the option of filing an amended complaint at any time during the eleven-month period that the motion to dismiss was pending....."). In light of this analysis, the court grants plaintiffs' motion to amend their complaint.

#### B. Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a Cause of Action

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989). Great specificity is not required to survive a Rule 12(b)(6) motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts from which the defendant will be able to frame a responsive pleading.'" *Garita,* 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990)). In so doing, however, plaintiff cannot rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.) (quoting *Snowden v. Hughes,* 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944)), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) " 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" *Garita,* 958 F.2d at 17

(quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)).

### 1. Count 1: Misrepresentation

In count one of the amended complaint plaintiffs charge Mr. Miller with misrepresentation and Fujitsu with vicarious liability for Mr. Miller's alleged misrepresentation. Plaintiffs allege Mr. Miller intentionally represented to Mr. Alexander that Mr. Miller was using travel expense money to buy office equipment and that he had the authority to do so. Plaintiffs further allege Mr. Miller knew or should have known that his representations were false, that Mr. Alexander relied on the accuracy of Mr. Miller's representations, and that as a direct result of Mr. Miller's actions, Mr. Alexander suffered losses. Plaintiffs allege Fujitsu is liable for the actions of Mr. Miller, its agent, because it knowingly adopted his false statements and used them as a pretext to terminate Mr. Alexander's employment.

Plaintiffs contend the complaint states a cause of action for negligent or intentional misrepresentation. Defendants assert that plaintiffs have failed to state a claim upon which relief may be granted, characterizing count one as a wrongful discharge claim. The corporate defendants contend they cannot be held vicariously liable for Mr. Miller's actions because the actions were outside the scope of his employment.

#### a. Liability of Individual Defendant

■ The New Hampshire Supreme Court has recognized the tort of intentional misrepresentation, also known as fraud. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46, 534 A.2d 706, 709 (1987); *see also Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 662 (1st Cir.1981); *MAC Finance Plan v. Stone*, 106 N.H. 517, 519, 214 A.2d 878, 880 (1965) (definition of fraud in the context of the Bankruptcy Act). The elements of fraud or deceit are (1) the defendant misrepresented a material fact to the plaintiff, knowing it to be false; (2) the defendant did so with fraudulent intent that the plaintiff act on it; and (3) that the plaintiff, without knowledge of its falsity, detrimentally relied on the misrepresentation. *See Proctor v. Bank of New Hampshire*, 123 N.H. 395, 399, 464 A.2d 263, 265 (1983); *MAC Finance Plan*, 106 N.H. at 519, 214 A.2d at 880; *Connelly v. Brown*, 73 N.H. 193, 194, 60 A. 750, 751 (1905). "Under New Hampshire law, a representation is fraudulent if made with knowledge of its falsity or with conscious indifference to its truth, and if the false statement was made for the purpose or with the intention of causing another to act on it." *Brochu*, 642 F.2d at 662 (citation omitted); *see also Manchester Bank v. Connecticut Bank & Trust Co.*, 497 F.Supp. 1304, 1316 (D.N.H.1980). To withstand a motion to dismiss, the plaintiff must " 'specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions.... It is not sufficient for the plaintiff merely to allege fraud in general terms.' " *Jay Edwards, Inc.*, 130 N.H. at 46–47, 534 A.2d at 709 (quoting *Proctor*, 123 N.H. at 399, 464 A.2d at 265).

■ In this case, the complaint clearly alleges Mr. Miller made a misrepresentation of material fact to Mr. Alexander by stating that Mr. Miller was using travel expense money to pay for office equipment and that he was authorized to do so. Amended Complaint ("complaint") ¶ 64. The complaint further asserts that Mr. Miller knew or should have known his representations were false and that the plaintiff relied on the accuracy of Mr. Miller's representations. Complaint ¶¶ 65, 66. The complaint states that, as a result of Mr. Miller's actions, plaintiff lost his employment with Fujitsu and suffered other losses. Complaint ¶ 67. Finally, the complaint asserts that Fujitsu is liable for Mr. Miller's actions. Complaint ¶ 68. Thus, plaintiffs' complaint expressly alleges two of the three elements of fraud or intentional misrepresentation, that Mr. Miller intentionally misrepresented a material fact to Mr. Alexander and that Mr. Alexander detrimentally relied on the misrepresentation.

The court notes the complaint fails to allege expressly that Mr. Miller made the misrepresentations with the intent that Mr. Alexander act on them. Under Rule 12(b)(6), the court must consider all reasonable inferences from the facts in the light most favorable to the plaintiffs. The court reasonably

infers from the plaintiffs' assertions—that Mr. Miller made the misrepresentations to Mr. Alexander to compel Mr. Alexander to submit false expense reports, that Mr. Miller personally profited from the false expense reports, and that Mr. Alexander relied on the misrepresentations in submitting the false expense reports—that plaintiffs assert Mr. Miller made the misrepresentations with intent that Mr. Alexander rely on them.

### b. Vicarious Liability of Corporate Defendants

Plaintiffs seek to hold the corporate defendants vicariously liable for Mr. Miller's alleged misrepresentations. The corporate defendants contend they cannot be held vicariously liable because Mr. Miller was acting outside the scope of his employment when participating in the scheme to submit inflated expense statements.

█ A principal is liable for torts of an agent committed while acting within the scope of the agent's employment. *Restatement (Second) of Agency* § 219(1) (1958). If a third person relies upon the apparent authority of an agent, the principal is also liable for torts of the agent committed while acting outside the scope of the agent's employment. *Id.* §§ 8A, 219(2)(d). Whether authority exists for one person to act on another's behalf is a question of fact. *Patterson v. Tirollo,* 133 N.H. 623, 627–28, 581 A.2d 74, 77 (1990).

█ Plaintiffs clearly allege Mr. Miller was acting on behalf of and in the scope of his duties for defendants as Director of the Northeast Region. Complaint ¶¶ 6, 13. Plaintiffs contend Mr. Miller said he was buying office equipment with the expense money and Mr. Alexander believed Mr. Miller's misrepresentation. Complaint ¶¶ 26, 30. Finally, the complaint contends Fujitsu knowingly adopted Mr. Miller's false statements. Complaint ¶ 68.

The court finds, viewing the pleadings in the light most favorable to the plaintiffs and indulging all reasonable inferences in their favor, that the complaint sufficiently alleges

facts from which the defendants could be held vicariously liable for Mr. Miller's alleged misrepresentations to Mr. Alexander.[1]

In summary, the court finds the complaint adequately states a claim for intentional misrepresentation against Mr. Miller and for vicarious liability against the corporate defendants. The court therefore denies defendants' motions to dismiss count one pursuant to Fed.R.Civ.P. 12(b)(6).

### 2. Count II: Intentional Interference with Mr. Alexander's Employment

Plaintiffs' amended complaint in count two charges Mr. Miller with intentional interference with Mr. Alexander's employment and Fujitsu with vicarious liability for Mr. Miller's interference with Mr. Alexander's employment. Plaintiffs claim Mr. Miller compelled Mr. Alexander to submit erroneous expense statements and made false statements to Fujitsu employees concerning what had transpired with respect to the expense statements. The complaint further alleges Mr. Miller knew or should have known that his actions placed Mr. Alexander's employment with Fujitsu in jeopardy. Defendants contend plaintiffs have failed to state a claim upon which relief can be granted because Mr. Miller, as an agent of Fujitsu, is not a third party with respect to the employment contract between Mr. Alexander and Fujitsu.

█ Under New Hampshire law, "[t]he elements necessary successfully to plead a cause of action for tortious interference with contractual relations are 'that (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference.'" *Jay Edwards, Inc.,* 130 N.H. at 46, 534 A.2d at 709 (quoting *Emery v. Merrimack Valley Wood Prods., Inc.,* 701 F.2d 985, 988 (1st Cir.1983)); *see also Riblet Tramway Co. v. Ericksen Assoc., Inc.,* 665 F.Supp. 81, 87 (D.N.H.1987); *Bricker v. Crane,* 118 N.H. 249, 252, 387 A.2d 321, 323

---

1. The court notes that questions concerning permissible elements of damages are appropriately addressed at a later stage in the proceedings.

(1978), *overruled on other grounds, Eastern Marine Constr. Corp. v. First S. Leasing, Ltd.,* 129 N.H. 270, 274, 525 A.2d 709, 712 (1987).

New Hampshire courts have recognized tortious interference with contractual relations, adopting § 766 of the *Restatement (Second) of Torts* (1979). *Emery,* 701 F.2d at 988; *Griswold v. Heat Inc.,* 108 N.H. 119, 124, 229 A.2d 183, 187 (1967). Section 766 states

[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766.

■ Plaintiffs have pled that Mr. Alexander had an economic relationship with a third party, Fujitsu. Complaint ¶¶ 8–12. Plaintiffs also have pled that Mr. Miller acted as Mr. Alexander's supervisor and "knew that the plaintiffs' financial security rested with him." Complaint ¶¶ 13, 28. It is reasonable to assume from these assertions that Mr. Miller was aware of Mr. Alexander's relationship with Fujitsu. Plaintiffs allege Mr. Miller made false statements to Fujitsu employees "with the purpose and effect to interfere with the plaintiff's expectation to continued employment with Fujitsu." Complaint ¶ 71. Plaintiffs have pled that Mr. Miller

intentionally and improperly interfered with the plaintiff's faithful performance of his duties as an employee of Fujitsu by compelling him to submit erroneous expense statements and by failing to apprise the plaintiff's superiors of the actual circumstances surrounding the plaintiff's actions when confronted by the plaintiff's surperiors [sic] when he knew or should have known that the plaintiff's employment relationship with Fujitsu was thereby being placed in jeopardy.

Complaint ¶ 72. Plaintiffs have pled damages from the interference. Complaint ¶ 76.

Because the plaintiffs have pled the necessary elements of tortious interference with contractual relations, the court must consider whether, as a matter of law, a co-employee who is an agent of the corporation can also be a third party for the purposes of interfering with the plaintiff's employment with the employer corporation. The complaint alleges that "[a]t all time[s] pertinent hereto, Mr. Miller was an officer of the Defendant Fujitsu and the plaintiff's supervisor, and acting on behalf of, and in the scope of his duties for, the defendant Fujitsu." Complaint ¶ 6. Defendants contend that, as a matter of law, count two is defective because Mr. Miller was an employee of Fujitsu, acting as an agent of the corporation, and therefore could not be a third party with respect to Mr. Alexander's employment contract with Fujitsu. The defendants cite *Fletcher v. Wesley Medical Ctr.,* 585 F.Supp. 1260, 1262 (D.Kan.1984), *O'Neill v. ARA Servs., Inc.,* 457 F.Supp. 182 (E.D.Pa.1978) and *Manley v. Pandick Press, Inc.,* 72 A.D.2d 452, 424 N.Y.S.2d 902 (1980) for this proposition. Defendants' Opposition to Plaintiffs' Motion for Leave to Amend Complaint at 6.

In *Fletcher,* the District Court for the District of Kansas stated that in the context of a tortious interference with employment claim, "[i]t is well established that an employer cannot be brought to task for interfering with its own relationships vis-a-vis its employees." 585 F.Supp. at 1262 (citations omitted). In *O'Neill,* the District Court for the Eastern District of Pennsylvania dismissed charges of malicious interference with prospective advantage against individual defendants because "according to the inferences of the complaint, they acted as agents of the corporation." 457 F.Supp. at 188. The *O'Neill* court based its dismissal of the charges, however, on the individual defendants' positions in the corporation, which conferred on them the privilege of interfering with plaintiff's employment relationship. *Id.* In *Manley,* the Supreme Court, Appellate Division, First Department dismissed as legally insufficient a count against the defendant corporation alleging that the corporation tortiously interfered with its own contract. 72 A.D.2d at 454, 424 N.Y.S.2d at 904.

Plaintiffs' response claims the New Hampshire Supreme court has "repeatedly recognized that a fellow employee may be liable for intentionally interfering with the plaintiff's contract of employment," citing *Griswold,* 108 N.H. at 124–25, 229 A.2d at 187, *Russell v. Croteau,* 98 N.H. 68, 94 A.2d 376 (1953) and *Huskie v. Griffin,* 75 N.H. 345, 348, 74 A. 595, 596–97 (1909). Plaintiff's Memorandum in Support of Their Objection to the Defendants' Motion to Dismiss at 11. The *Griswold* court considered a claim for intentional interference with contractual relations against a co-employee and held that the co-employee was privileged to interfere in the plaintiff's employment. 108 N.H. at 124–26, 229 A.2d at 188. The *Russell* court allowed a claim by an employee against the division manager for purposeful interference with contractual relations without justification. 98 N.H. at 70, 94 A.2d at 377–78. The *Huskie* court considered a case where the plaintiff's co-employee/supervisor, after plaintiff announced he was leaving the defendant corporation's employ, interfered with his new job. 75 N.H. at 346, 74 A. at 596. None of the New Hampshire cases, however, explicitly consider whether a co-employee acting as an agent of the employer can be a third party for the purposes of interfering with a contract between the plaintiff and the corporate employer.

The court is of the opinion that the New Hampshire Supreme Court would hold that based on the plaintiffs' allegations, Mr. Miller was acting as an agent of Fujitsu and could not be a third party with respect to the employment contract between Mr. Alexander and Fujitsu. The court therefore grants defendants' motion to dismiss count II of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### 3. Count III: ERISA Claims
#### a. Discriminatory Denial of Benefits under ERISA

■ Plaintiffs allege defendants improperly discharged Mr. Alexander to deprive him of benefits in violation of 29 U.S.C.A. § 1140 (West 1985). Defendants contend it is an open question of law whether a vested employee may bring an action under § 1140.

Defendants further assert Mr. Alexander must exhaust his administrative remedies before bringing suit against the corporate defendants and Mr. Alexander has failed to plead that he has done so because he never pled he applied for and was denied benefits. Plaintiffs contend exhaustion of administrative remedies is unnecessary, but that Mr. Alexander did in fact exhaust his administrative remedies before bringing this suit. Finally, plaintiffs allege they have stated a prima facie case of discriminatory denial of benefits under § 1140. Defendants contend plaintiffs have failed to make a prima facie showing because the facts in the complaint are insufficient to raise the inference that Mr. Alexander was fired with the intent to deprive him of benefits and because plaintiffs fail to assert Mr. Alexander applied for and was denied benefits.

Defendants argue a vested employee may not be able to bring an action under § 1140, citing *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 232 (S.D.N.Y.1989) and *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 238 (4th Cir.1991). By inference, defendants appear to be arguing that Mr. Alexander was vested. The complaint does not allege, however, that Mr. Alexander was vested. There is nothing in the complaint from which the court can reasonably infer that Mr. Alexander was vested. The court therefore need not consider defendants' contentions on this issue.

Defendants assert Mr. Alexander must exhaust his administrative remedies before bringing suit against the corporate defendants under ERISA. Plaintiffs argue there is no requirement that plaintiff exhaust his administrative remedies before bringing suit under § 1140.

"The circuits are split as to whether exhaustion of internal plan remedies is a prerequisite to bringing suit on an ERISA claim in federal court." *Treadwell v. John Hancock Mut. Life Ins. Co.,* 666 F.Supp. 278, 283 (D.Mass.1987). The Ninth and Third Circuits have held that exhaustion of administrative remedies is required before a plaintiff brings suit based on a violation of the terms of a plan regulated by ERISA but that exhaustion of administrative remedies is not

necessary before plaintiff brings suit based on a violation of the terms of ERISA itself. *See Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889, 893–94 (3d Cir.1986); *Amaro v. Continental Can Co.,* 724 F.2d 747, 751–52 (9th Cir.1984). The Seventh and Eleventh Circuits require exhaustion of administrative remedies regardless of the origin of plaintiff's claim. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir. 1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983).

The First Circuit Court of Appeals has not addressed directly whether a plaintiff bringing a suit based on statutory ERISA violations must first exhaust administrative remedies. Defendants' citation to *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988) is inapposite. The *Drinkwater* court held that because plaintiff's claims were purely contractual, rather than statutory ERISA claims, the plaintiff was required to exhaust his administrative remedies. *Id.* at 826. In the instant case, plaintiffs allege breach of statutory duties under § 1140.

In *Treadwell,* the District Court for the District of Massachusetts held that

> [a]fter careful consideration of the competing views of requiring exhaustion for ERISA claims, this court agrees with the Ninth and Third Circuits in *Amaro* and *Zipf,* that there is a sensible distinction between plan-based and statute-based claims.... Thus, plaintiff is not required to exhaust pension plan remedies before bringing his section [1140] action to court.

*Treadwell,* 666 F.Supp. at 284. Similarly, the District Court for the District of Maine has stated "[a]lthough some conflict exists among the circuit courts of appeal regarding exhaustion of statutory violations of ERISA, most courts hold that, unlike claims for denial of benefits under ERISA, plaintiffs are not required to exhaust administrative remedies for statutory-based violations." *United Paperworkers Int'l Union v. International Paper Co.,* 777 F.Supp. 1010, 1017 (D.Me.1991) (footnote omitted). This court agrees with and adopts the view in *Treadwell* and *United Paperworkers* that exhaustion of administrative remedies is unnecessary when plaintiffs' claim is based on a statutory violation of ERISA.

However, even if the court were to require exhaustion of administrative remedies, the court agrees with plaintiffs that Mr. Alexander exhausted his administrative remedies before bringing this case. The court finds the complaint adequately pleads that Mr. Alexander attempted to file a claim for benefits. Defendants note no specific procedures Mr. Alexander failed to follow. The complaint claims Mr. Alexander spoke with Mr. Santora of Human Services on February 18, 1991, informed him of his disability, and requested that a representative be sent to his residence to meet with him to verify the seriousness of his condition. Complaint ¶ 45. Plaintiffs allege that when Mr. Alexander was out on disability leave in 1989, he followed "the established and accepted procedure of informing company officials orally of his condition, following which Human Resources sent the plaintiff forms to fill out and requests for medical reports." Complaint ¶ 49. The complaint asserts that Mr. Alexander followed the same procedure to report his injury of February 13, 1991. Complaint ¶ 50. Plaintiffs assert Mr. Alexander provided Fujitsu officials with a note dated February 15, 1991, written by Dr. Donald Pettit, documenting Mr. Alexander's disability. Complaint ¶ 51. The complaint notes that Human Resources failed to forward paperwork to Mr. Alexander in connection with his disability benefits. Complaint ¶ 52. Plaintiffs further contend that, after his termination, Mr. Alexander repeatedly asked Fujitsu to reconsider his termination and submitted two letters to Fujitsu officials asking for reconsideration. Complaint ¶ 53. Finally, plaintiffs state Mr. Alexander made "every reasonable effort through his superiors and Human Resources to have his termination reconsidered but those efforts were unavailing." Complaint ¶ 54.

Defendants counter that plaintiffs fail to allege Mr. Alexander applied for and was denied benefits and therefore he did not pursue all administrative remedies before bringing suit. Defendants appear to be asserting

that Fujitsu was not given the opportunity to handle Mr. Alexander's complaint internally before plaintiffs brought suit. The court notes that plaintiffs must apply for and be denied benefits before a cause of action accrues under ERISA. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598–99 (2d Cir.) (cause of action arose for statute of limitations purposes not when a corporation refused to grant employees credit for service rendered prior to a merger, but only when a plaintiff applied for and was denied pension benefits); *cert.. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983), *called into question on other grounds, Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.) (cause of action under ERISA does not accrue until an application is denied), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981). As noted above, plaintiffs' complaint enunciates numerous attempts to have defendants resolve the allegedly wrongful denial of benefits before initiating this suit. The court finds that plaintiffs' complaint is sufficient to survive defendants' Rule 12(b)(6) motion on the grounds that Mr. Alexander failed to exhaust his administrative remedies.

The court next must consider whether plaintiffs have made a prima facie showing of discriminatory denial of benefits under § 1140. Defendants argue plaintiffs have failed to make a prima facie showing because the facts in the complaint do not support an inference that defendants terminated Mr. Alexander's employment to deprive him of benefits.

■ Section 1140 states

[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

A plaintiff who asserts a claim under § 1140 must make a prima facie showing of three elements: (1) plaintiff belongs to a protected group, (2) plaintiff was qualified for the position, and (3) plaintiff was discharged under circumstances that give rise to an inference of discrimination. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114–15 (2d Cir. 1988); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (Title VII). Defendants do not dispute that Mr. Alexander has adequately pled that he meets the first two elements. Therefore the court will focus on whether plaintiffs have adequately pled the third element, discriminatory intent.

Courts have adopted the presumptions and shifting burdens established in *McDonnell Douglas* to determine whether plaintiffs have made a sufficient showing of discriminatory intent under § 1140. *Dister,* 859 F.2d at 1112; *Correto v. Bridgeport Metal Goods Mfg. Co.,* No. C–89–39–L, slip op. at 4 (D.N.H. Aug. 22, 1990), *modified,* No. C–89–39–L, slip op. at 1 (D.N.H. Aug. 28, 1990). The *McDonnell Douglas* Court established a three-step analysis. 411 U.S. at 802–05, 93 S.Ct. at 1824–26; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (citation omitted) (quoting *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25).

1. Plaintiffs' Showing of a Prima Facie Case

■ As the first step of the *McDonnell Douglas* analysis, the court revisits the issue

previously discussed, whether plaintiffs have pled adequately a prima facie case of discriminatory denial of benefits under § 1140. This determination depends on whether plaintiffs have pled adequately the third element of a prima facie case, that Mr. Alexander was discharged under circumstances that give rise to an inference of discrimination. "The nature of the plaintiff's burden of proof at the prima facie stage is *de minimis.*" *Dister,* 859 F.2d at 1114. In *Dister,* plaintiff established a prima facie case that he was discharged under circumstances giving rise to an inference of discrimination by showing that he was discharged four months and seven days before his benefits were to vest and that his discharge saved the defendant approximately $550,000. *Id.* The *Dister* court also noted plaintiff's claim that he, a vested employee, was discharged while his supervisor, a non-vested employee, was encouraged to remain with the defendant corporation. *Id.*

In this case, plaintiffs assert that on February 17, Mr. Gartman came to Mr. Alexander's apartment and gave him a letter of termination. Complaint ¶ 41. They further claim Mr. Alexander was told by Mr. Gartman on February 11 that he was still considered to be on the Fujitsu payroll. Complaint ¶ 35. Plaintiffs allege the termination letter was typed on February 13 but backdated to February 8. Complaint ¶ 41. Plaintiffs note that on February 13, Mr. Alexander became disabled. Complaint ¶ 39. Plaintiffs allege defendants knew of Mr. Alexander's disability and knew that Mr. Alexander's supervisor was responsible for the inaccurate expense statements at the time defendants decided to terminate Mr. Alexander's employment. Complaint ¶¶ 56, 57. Plaintiffs conclude

> [t]he reason why representatives of the defendant Fujitsu caused the plaintiff's termination to be back-dated to February 8, 1991, was to deprive the plaintiff of his expectation to employee benefits to which he was entitled as a result of having been an employee with GTE and Fujitsu for 24 years, including full pension and retirement benefits.

Complaint ¶ 61. Mr. Alexander claims he would have become eligible for early retirement benefits in November 1992. Complaint ¶ 60.

Defendants claim Mr. Alexander has failed to allege he applied for and was denied benefits, a necessary element of a claim under § 1140. As noted above, the court finds Mr. Alexander has pled sufficiently that he attempted to apply for and was denied benefits.

The court finds plaintiffs have met their *de minimis* burden of adequately pleading a prima facie case that Mr. Alexander was discharged under circumstances giving rise to an inference of discrimination.

### 2. Defendants' Articulation of Legitimate Reason for Mr. Alexander's Discharge

■ Under the *McDonnell* analysis, if plaintiffs meet their burden of adequately pleading a prima facie case of discriminatory denial of benefits, a presumption arises that the employer unlawfully discriminated against the employee. *Dister,* 859 F.2d at 1112. The burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employee's discharge to rebut the presumption. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Dister,* 859 F.2d at 1112, 1115. "To dispel the inference of discrimination arising from the establishment of a prima facie case, [defendant] is required to articulate—but not prove—a legitimate, nondiscriminatory reason for the discharge." *Dister,* 859 F.2d at 1115. The employer's explanation must be " 'clear and specific' ". *Id.* (quoting *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)). In *McDonnell Douglas,* the court held that the employer met its burden by asserting that the plaintiff's participation in unlawful conduct against the defendant was the legitimate reason for plaintiff's discharge. 411 U.S. at 803, 93 S.Ct. at 1825; *see also Dister,* 859 F.2d at 1115 (corporate reorganization and change in business priorities was the legitimate reason for plaintiff's discharge); *Correto,* No. C–89–39–L, slip op. at 4 (economic downturn was the legitimate reason for plaintiff's discharge).

In this case, defendants assert Mr. Alexander's employment was terminated because he

violated company policy by submitting false expense statements to the company. "[The] reality is that Alexander, as he well knows, was fired because he participated in a scheme in which he admittedly submitted fraudulent expense vouchers to Fujitsu." Motion of Corporate Defendants to Dismiss for Failure to State a Claim upon Which Relief Can be Granted ("Motion to Dismiss") at 19. The court finds defendants have met their burden of proffering a legitimate, non-discriminatory reason for Mr. Alexander's discharge.

### 3. Plaintiffs' Opportunity to Show Legitimate Reason is Pretext for Discrimination

Because defendants have proffered a legitimate reason for Mr. Alexander's discharge, the court must consider whether plaintiffs have pled adequately that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804–06, 93 S.Ct. at 1825–26; *Dister*, 859 F.2d at 1111. "This may be accomplished 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Dister*, 859 F.2d at 1112, 1113 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

The court first considers whether plaintiffs have met their burden by pleading facts showing indirectly that defendants' proffered explanation is unworthy of belief. Plaintiff "may prevail upon a showing that the employer's given legitimate reason is unworthy of credence, that is, that the reason supplied was not the true reason for the unfavorable employment decision." *Id.* at 1113 (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). In *McDonnell Douglas*, a Title VII case, a black plaintiff alleged that his discharge and defendant's refusal to rehire him were racially motivated. 411 U.S. at 794, 93 S.Ct. at 1820. The employer contended plaintiff was discharged and his application for rehire rejected because he had participated in unlawful civil rights protests against the corporation. *Id.* at 803, 93 S.Ct. at 1825. The

*McDonnell Douglas* Court noted that an employer "may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races." *Id.* at 804, 93 S.Ct. at 1825. In the instant case, the court finds plaintiffs have not offered sufficient allegations to show indirectly that defendants' proffered reason for discharging Mr. Alexander, that his employment was terminated because of his participation in a scheme to submit inflated expense vouchers to defendants, is unworthy of belief.

The court next considers whether plaintiffs have met their burden by introducing allegations showing that defendants were more likely motivated by discriminatory intent than by their proffered reason for discharging Mr. Alexander. "'No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment.'" *Dister*, 859 F.2d at 1111 (quoting *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd*, 742 F.2d 1441 (2d Cir.1983)). "Plaintiff is required to prove more than the single fact that his termination precluded him from vesting into the [plan]; he must demonstrate [defendant's] unlawful purpose in firing him." *Id.*

In *Dister*, the court held that plaintiff failed to introduce sufficient evidence that defendant was motivated by a discriminatory reason. *Id.* at 1117. The court found plaintiff had offered little more than what he offered in his prima facie case, that his proximity to vesting and the substantial savings accruing to the defendant from his dismissal created an issue as to discriminatory discharge. *Id.* at 1117, 1117 n. 1. In *McDonnell Douglas*, the Court indicated that, on remand, plaintiff could introduce statistics as to the employer's employment policy and practice to enable the court to determine whether defendant's refusal to rehire plaintiff was part of a general pattern of discrimination against blacks. 411 U.S. at 804–05, 93 S.Ct. at 1825. In light of *McDonnell Douglas*, the *Dister* court indicated that plaintiff's failure to present any statistical or other evidence from which an inference could be

drawn that defendant was engaging in a discriminatory scheme when it discharged plaintiff contributed to the court's finding that plaintiff had failed to meet his burden of showing defendant's discriminatory intent. *See* 859 F.2d at 1117.

In this case, plaintiffs assert that "Fujitsu, through its agents, was seeking a pretext for replacing employees with many years of service to their credit so as to avoid the exposure of paying the cost of high employee benefit programs." Complaint ¶ 80. Plaintiffs state that four other employees were terminated or forced to resign by the defendants in accord with defendant's policy which lead to replacing older employees with many years of service with younger employees. Complaint ¶ 81. The complaint asserts that "[i]n terminating the plaintiff Gary L. Alexander, the defendant Fujitsu, through its agents and employees, had the specific intent to deprive him of his ability to claim employee benefits." Complaint ¶ 85.

■■■ The court notes that the complaint fails to state the size of Fujitsu, the ages of the other four workers allegedly improperly discharged, or the dates their employment was terminated compared to the dates they would have become vested. The court, however, does not consider the allegations in isolation. Plaintiffs also allege in their complaint that Mr. Alexander was discharged in February 1991 and would have become eligible for early retirement benefits in November 1992. Complaint ¶¶ 41, 60. Mere proximity of discharge to time of vesting, although not dispositive of defendants' intent in terminating plaintiff's employment, is a factor courts may consider in determining whether plaintiff's discharge was motivated by discriminatory intent. *See Dister,* 859 F.2d at 1117.

■■■ Most significantly, plaintiffs assert Mr. Alexander's termination letter was delivered on February 17, typed on February 13, and backdated to February 8. Complaint ¶ 41. Plaintiffs assert Mr. Alexander was disabled on February 13. Complaint ¶ 39. The complaint alleges Mr. Alexander was "treated as an employee of Fujitsu" and "carried as an employee of Fujitsu" until February 13. Complaint ¶¶ 46, 47. Plaintiffs also contend defendants were aware of Mr. Alexander's disability and backdated his termination letter to deprive Mr. Alexander of his benefits. Complaint ¶¶ 56, 61.

The court is mindful of its obligation not to give weight to bald assertions in a complaint. *Chongris,* 811 F.2d at 37 (quoting *Snowden,* 321 U.S. at 10, 64 S.Ct. at 402). Similarly, the court acknowledges that plaintiffs must "at least outline the facts constituting the alleged violation" to state a cause of action. *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir. 1979) (in the context of Title VII). The court finds that the plaintiffs' allegations, taken in their entirety and viewed in the light most favorable to them, sufficiently outline facts showing that the defendants' discharge of Mr. Alexander was more likely motivated by discriminatory intent than by its proffered legitimate reason.

Based on the foregoing analysis, the court finds that plaintiffs have sufficiently pled a cause of action for discriminatory denial of benefits pursuant to § 1140. The court denies defendants' motion to dismiss the allegations of discriminatory denial of benefits in count three.

### b. Breach of Fiduciary Duties under ERISA

Plaintiffs allege defendants violated the fiduciary duties enunciated in 29 U.S.C.A. § 1104 (West 1985 & Supp.1992). Defendants allege plaintiffs fail to state a claim for breach of fiduciary duties because the corporate defendants are not fiduciaries within the definition of 29 U.S.C.A. § 1002(21)(A) (West Supp.1992).

ERISA defines "fiduciary" in § 1002(21)(A), stating

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)

he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA imposes duties on fiduciaries in § 1104, stating "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries...." A participant or beneficiary of a plan may bring suit for a violation of the duties imposed by § 1104 under 29 U.S.C.A. § 1132(a)(3) (West 1985).

■■■ Defendants contend plaintiffs' allegation that the corporate defendants are fiduciaries under ERISA is a "bald assertion." Motion to Dismiss at 16 n. 5. The complaint asserts that "[t]he defendants Fujitsu, Fujitsu America, Inc., are fiduciaries within the meaning of 29 U.S.C. § 1002." Complaint ¶ 87. The court notes that assertion alone is insufficient to plead that defendants are fiduciaries. However, the complaint also asserts that Human Resources determined whether Mr. Alexander would be discharged and determined his eligibility for disability benefits. Complaint ¶¶ 35, 44–45, 49–54. An employer who administers a plan in accordance with its terms is a fiduciary under ERISA. *See United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*, 771 F.Supp. 992, 999 (E.D.Mo.1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992).

■■■ The court finds that the complaint, taken as a whole, adequately alleges that the corporate defendants exercised discretionary authority or discretionary responsibility in the administration of the plan, and therefore adequately alleges that the corporate defendants are fiduciaries under ERISA. Plaintiffs claim defendants, by backdating Mr. Alexander's termination letter with intent to deprive him of benefits, violated their fiduciary duties under § 1104. Complaint ¶¶ 84–88. The court therefore finds that the complaint, viewed in the light most favorable to the plaintiffs, adequately states a claim for breach of fiduciary duties in violation of § 1104. The court therefore denies defendants' motions to dismiss the allegations of breach of fiduciary duties in count three pursuant to Fed.R.Civ.P. 12(b)(6).

### 4. Count IV: Loss of Consortium

Ms. Alexander claims relief for loss of the care, comfort and society of her husband and lost enjoyment of life due to the defendants' actions. Plaintiffs concede that extracontractual remedies are unavailable under ERISA but seek compensatory damages derivative of their common law claims of misrepresentation and tortious interference with contractual relations. Defendants concede that, to the extent the underlying claims of misrepresentation or tortious interference with contractual relations are actionable, loss of consortium is also actionable.

In view of the court's ruling on plaintiffs' claim of misrepresentation in count one, the court finds the complaint adequately states a claim for loss of consortium. The court therefore denies defendants' motion to dismiss count four pursuant to Fed.R.Civ.P. 12(b)(6).

### *Summary*

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint (document no. 15) is granted. Motion of Corporate Defendants to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (document no. 14) is granted as to count two and denied as to counts one, three and four. Motion of Defendant William R. Miller to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (document no. 9) is granted as to count two and denied as to counts one, three and four.

SO ORDERED.